### Otto J. Rudolph, Appellee, v. City of Chicago, Appellant.

### Gen. No. 46,141.

Opinion filed May 11, 1954. Re-
hearing denied June 2, 1954. Released for publication June 3, 1954.

JOHN J. MORTIMER, Corporation Counsel of City of
Chicago, for appellant. L. LOUIS KARTON, Head of Ap-
peals and Review Division, and SYDNEY R. DREBIN,

Assistant Corporation Counsel, both of Chicago, of counsel.

RAYMOND S. BARISH, of Chicago, for appellee.

MR. JUSTICE ROBSON delivered the opinion of the court.

Plaintiff filed his complaint against the City of Chicago, defendant, to recover damages occasioned by the alleged negligent operation of a garbage truck of the defendant. The jury found for the plaintiff and returned a verdict in the sum of $15,000, upon which the court entered the judgment from which this appeal is taken.

Defendant's first contention is that plaintiff failed to prove he used due care and caution for his own safety at the time and place of the accident.

The facts, as revealed by the record, are that on the evening prior to the accident, the plaintiff, who worked on the 11:30 p. m. to 7:30 a. m. shift, decided to leave shortly after reporting at work. He stopped at a tavern and had about five beers. He then went home, fell asleep and woke up at about six in the morning. After breakfast he decided to go back to the shop and pick up two friends with whom he had made arrangements to pick cherries in his backyard. The day was clear and warm. He arrived at the shop late and both men were gone. He drove to where one of the men lived but did not find him. He then decided to get the second man. Just prior to the collision he was driving his car at about 18 to 20 miles an hour, east on 25th street, which is about thirty feet wide with a white line down the center about four or five inches wide. As he came to the block between Springfield and Avers avenues where the accident occurred, there was no traffic behind him or ahead of him. He noticed about 120 feet away a city garbage truck coming toward him on the

372

north side of the street traveling west in its own lane. A car was parked along the curb on the north side of the street. Two disinterested witnesses for plaintiff, who did not see the collision, corroborated his statement about the parked car. According to plaintiff, when the truck was about 15 or 20 feet back of the parked car, which was about 53 feet from the plaintiff, it suddenly swerved out and went over the white line into plaintiff's lane of travel. It was traveling about 18 to 20 miles an hour. Plaintiff had a part of his left arm resting on the ledge of the open window of the car, the other part sticking over the side, and his thumb and forefinger on the wheel. He did not change the direction of his car although there was room for him to swing to the right. There was a collision between the truck and the car, and plaintiff's arm, which he had not pulled in, was badly injured.

Two of defendant's witnesses, police officers, testified that immediately after the collision plaintiff did not have his shoes on, that they were on the floor of the car. Plaintiff denied this. Three of defendant's witnesses testified that there was a strong odor of alcohol on plaintiff's breath. An intern at the hospital to which plaintiff was taken testified that in his opinion the plaintiff was intoxicated. A nurse at the hospital testified she did not notice the odor of alcohol on plaintiff's breath.

The driver of defendant's truck stated that he was driving west on 25th street just prior to the accident at about fifteen miles an hour; that he did not see the plaintiff until he was about 25 feet away, then more or less visualized him; that there were no cars parked on his side of the street; that suddenly plaintiff's car crossed over the white line when it was in the middle of the block and sideswiped his car; that he had not swerved his truck in any way and that it was on the proper side of the street about one foot north of the

white line. After the accident he went over to plaintiff's car and saw his arm was badly injured. He smelled liquor on the plaintiff's breath. He observed that there was dirt and glass from plaintiff's automobile about a foot and a half north of the white line. One of the police officers, a witness for defendant, corroborated the location of the debris.

It is apparent that the testimony was sharply conflicting and confusing. The question of whether plaintiff was guilty of contributory negligence is ordinarily a question of fact for the jury. It becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. *Thomason v. Chicago Motor Coach Co.,* 292 Ill. App. 104; *Thomas v. Buchanan,* 357 Ill. 270; *Mueller v. Phelps,* 252 Ill. 630; *O'Rourke v. Sproul,* 241 Ill. 576. There is such a conflict in the evidence that we cannot conclude that all reasonable minds would say that the injury was the result of the negligence of the plaintiff. It was a question for the jury to decide.

The defendant complains of certain instructions. The record discloses that all the given instructions were agreed upon by counsel representing both parties in a conference with the court. There were no refused instructions. Each side preserved a general objection to the instructions. In the motion for new trial, only a general objection was made to all of the instructions and none to the specific instructions cited as grounds for reversal at this time. This court in 1947 in the case of *Krug v. Armour & Co.,* 335 Ill. App. 222, held that the failure to specifically point out the instructions objected to in the motion for new trial constituted a waiver of that point on appeal. Subsequently, in *Pajak v. Mamsch,* 338 Ill. App..337, the Second Division of this court, as then constituted, discussed at

length the reasons for its decision in *Krug v. Armour & Co.* and approved it. It has been followed in *Chism v. Decatur Newspapers, Inc.,* 340 Ill. App. 42, and *Weinrob v. Heintz,* 346 Ill. App. 30.

The bench and the bar have sometimes with justification been accused of keeping the door of justice closed to the simplification of the judicial process, which in turn causes undue delay and increases the expense of litigation. *Krug v. Armour & Co.* was a step forward. The decision required the motion for new trial to set forth with particularity the instructions which were claimed to have been misleading or erroneous, thus bringing to the attention of the trial court the specific objections so that if it erred it could grant a new trial. It is a simple and direct method. It prevents the moving party from hiding behind a general objection in the trial court and for the first time raising with particularity in the Appellate Court an objection to misleading or erroneous instructions. We know that there have been decisions to the contrary. *Baker v. Thompson,* 337 Ill. App. 327; *Hannigan v. Elgin, Joliet & Eastern Ry. Co.,* 337 Ill. App. 538, and *Both v. Collins,* 339 Ill. App. 437. These opinions, we believe, tend to canonize practices closing the door of justice to the improvement of our procedure. The adoption of the Practice Act in June of 1933 abolished the general demurrer in pleading. We see no good reason for retaining vestiges of similar practices which are but snares and pitfalls for litigants. We adhere to *Krug v. Armour & Co.* and the cases that follow it.

Defendant's last contention is that the trial court erred in permitting the attorney for plaintiff to introduce evidence before the jury charging the attorney for the defendant with subornation of perjury. Mr. Powers McGuire, a law partner of Raymond Barish, plaintiff's attorney, testified that he informed Barish that during the course of the trial he had overheard

a conversation outside the courtroom between defendant's witness, Dr. Sigmund Sabaitaitis, and John Thornton, one of defendant's attorneys, in which Thornton told Sabaitaitis to testify to everything set forth on a piece of paper, which was of legal size, except that which was marked out. On the basis of this, plaintiff's counsel on cross-examination of Sabaitaitis inquired if the witness had a conversation with counsel for the defendant in the hall. The witness admitted a conversation with one of defendant's attorneys but denied that he was told to testify to certain things and not to those scratched out on the paper. McGuire was shown one of defendant's instructions which was marked for identification as defendant's exhibit 8 that had been revised and said it resembled the paper Thornton had in his hand in the hall. There was no objection by the defendant to this testimony. The court held a conference in chambers after which plaintiff's counsel informed the jury that the information he had was garbled and told the jury they should disregard it. He apologized to Mr. O'Malley. The court made no statement. Thereafter O'Malley, one of defendant's attorneys, put Thornton on the stand. He stated he had talked to Mr. Kvaule of their office in the hall, and not Sabaitaitis, and told him to take a jury instruction that was being revised down to the office and have it rewritten. The court did not attempt to stop the examination nor did it instruct the jury to disregard this testimony. It was discussed by the defendant in its closing arguments and attorney for plaintiff replied to it.

The court before instructing the jury stated to them that it had been agreed and stipulated between the lawyers in the case that defendant's exhibit 8 for identification, which was the revised instruction that was shown to McGuire and Thornton, contained a point of

376

law and did not pertain at all to the evidence in the case.

█ As we said, this is a close case on the issue of fact. It is always difficult for a court to inject itself in a trial but it has the duty of controlling the proceedings so that parties litigant are afforded equal opportunity to have the issues of their case tried by a jury free from prejudicial influence and improper conduct of counsel. *Bishop v. Chicago Junction Ry. Co.*, 289 Ill. 63. After it was apparent to the court that counsel for the plaintiff had no basis for his charge of subornation of perjury by defendant's counsel, the court should have instructed the jury that it should not consider the testimony introduced by the plaintiff on this charge, and thereafter should not have permitted that matter to becloud the issues before the jury. Perhaps it was impossible to do this or to do anything which would thereafter have given defendant a fair trial. The seed of suspicion against the defendant had been implanted in the jury's mind by the precipitant action of counsel for plaintiff. Jurors are laymen, and if a fair trial is to be had before them, the issues must be presented fairly and simply. Digressions into an issue which cast a cloud upon the honesty of the opposing side (which in this case was the City of Chicago) can sometimes make a fair trial utterly impossible regardless of what the judge says or does about the matter. We can see from the record the trial judge made a serious effort to correct the error in the instant case, but courts hesitate to intervene when there is no objection by counsel. Nevertheless, it is important that courts should stop argument of this character and direct the jury not to consider it. They should do this on their own motion. *McWilliams v. Sentinel Pub. Co.*, 339 Ill. App. 83.

█ We conclude that this was reversible error in view of the very sharp conflict on the issues in this case.

377

The judgment must, therefore, be reversed and the cause remanded with directions to grant defendant a new trial.

*Judgment reversed and cause remanded with directions.*

Schwartz, P. J., concurs.
Tuohy, J., took no part.