(No. 33623.—

RUSSELL BELFIELD *et al.*, Appellees, *vs.* RALPH COOP *et al.*, Appellants.

*Opinion filed March 22, 1956—Rehearing denied May 22, 1956.*

SEARS AND STREIT, of Chicago, SAMUEL SAXON, of Plainfield, and JOHN P. SIMPSON, of Aurora, (BARNABAS F. SEARS, and ROBERT F. CASEY, of counsel,) for appellants.

ROOT & HOFFMAN, of Morris, and DAVID C. MEWHIRTER, of Yorkville, for appellees.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Kendall County declaring that a certain instrument is not the last will and testament of Evreard Belfield, deceased, setting aside said instrument and declaring the probate thereof null and void. The decree was entered upon the verdict of a jury in an action brought by the plaintiffs, Russell Belfield and Helen Falkenberg, a nephew and niece of deceased and his sole heirs-at-law. The defendants were Ralph Coop and Sara Grate as joint executors of the will, and the legatees and devisees hereinafter named, all of whom appealed except Earl Horton and Florence Grate. Sara Grate, Ida Mae Silvius, Florence Grate and Earl Horton, defendants, were nieces and a nephew of Agnes Belfield, testator's deceased wife.

Evreard Belfield, a resident of Kendall County, died in a hospital at Joliet, on April 19, 1953, at the age of 83 years. The will in question, dated April 16, 1953, was duly admitted to probate in the county court of Kendall County. It provided for the payment of the testator's just debts and funeral expenses and the erection of a monument over his

grave and that of his deceased wife; bequeathed $10,000 to each of the plaintiffs; devised a farm, containing 160 acres, valued at about $58,400, and known as the Belfield homestead, to Ralph Coop, a tenant; devised another farm of 143 acres, valued at about $47,500, known as the Wilson farm to Clinton Wilson, known as Jack Wilson, and described as a friend of the testator; devised a third farm, known as the Bundy farm, containing 160 acres and worth about $54,000 to Sara Grate, described in the will as testator's niece; devised a fourth farm, known as the Grate farm, containing 158 acres and valued at $35,340, to a friend, Edward Markstrom, Sr.; devised a fifth farm containing 120 acres worth about $21,600, and known as the Dano farm to Ida Mae Silvius, designated as testator's niece, and her husband, Jesse L. Silvius; directed the executors to give bond as required by statute and to sell the remaining farm lands to pay bequests and State inheritance and Federal estate taxes, and to distribute the balance, if any, in accordance with the residuary clause, which devised and bequeathed all the residue "to my nephews Russell Belfield and Earl Horton and my nieces Helen Falkenberg, Sara Grate, Florence Grate and Ida Mae Silvius in equal shares, share and share alike."

The evidence shows that Evreard Belfield left an estate valued in excess of $366,000, consisting of seven farms of the aggregate value of $311,992.50, and personal property valued at $54,013.29, and that the value of the residuary estate, after deducting specific legacies, fees and taxes, was $2730.84, or about $455.14 for each of the six residuary beneficiaries. Agnes Belfield, wife of the decedent, predeceased him by about a month, having died intestate, on March 18, 1953. The Belfields were married in 1906 and never had, or adopted, any children. This property was acquired largely through their joint efforts, but Agnes had inherited certain money from her parents which she contributed to the purchase of the farms. Title to five of the

seven farms had been vested in Agnes and Evreard Belfield as joint tenants, and title to the Belfield homestead farm was in Evreard Belfield. Title to the Martin farm, which had originally been purchased by Agnes and her brother, had been vested in Agnes and Evreard Belfield as tenants in common. Evreard Belfield had executed a will on October 1, 1951, leaving his entire estate to his wife. Agnes Belfield left surviving as her sole heirs-at-law her husband and her sister, Margaret Horton, mother of Earl Horton, and her nieces, Sara Grate, Florence Grate and Ida Mae Silvius, daughters of a deceased sister, Janet Grate.

The complaint charged that the testator, at the time of the execution of the purported will, lacked testamentary capacity and was under the undue influence, dominion and control of the defendant Sara Grate, whereby her will was substituted for his.

All of the defendants except Earl Horton, who was defaulted, answered and denied the allegations of the complaint. At the trial the defendants made motions for a directed verdict generally and upon the issues of testamentary capacity and undue influence separately, both at the close of plaintiffs' case and at the close of all the evidence. These motions were overruled as were motions for judgment notwithstanding the verdict and for a new trial. The errors assigned and argued here are: (1) that the trial court erred in admitting certain evidence on behalf of plaintiffs and excluding certain evidence offered on behalf of the defendants; (2) that error was committed in overruling various motions; (3) that the verdict is not supported by the evidence; (4) that the court erred in giving certain instructions tendered by plaintiffs; and (5) that the argument and conduct of counsel for plaintiffs was prejudicial.

Plaintiffs called defendant Earl Horton, one of the six residuary beneficiaries, as a witness under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1953, chap. 110, par.

184.) Over repeated objections by defense counsel, he was permitted to testify to conversations he said he had with Sara Grate relative to Evreard Belfield's "attempting to make a will." The objections were made upon the ground that any declarations or admissions by Sara Grate relating to testamentary capacity or undue influence were inadmissible and prejudicial as far as the other beneficiaries were concerned since the interests of the legatees and devisees under the will in question were several and not joint, and no conspiracy was charged. The court sustained a few of the objections interposed to statements attributed to Sara Grate by Horton and ordered the answers stricken, but allowed most of them to stand. The reasons for the alternating rulings are not apparent. For example, Horton at one point testified that Sara Grate said to him, "If he goes to the hospital, I don't think we will get the will through, I don't think we can." An objection made at this time was sustained and the answer ordered stricken. But without being asked another question, Horton then volunteered: "Well anyway she expressed an opinion that it would be harder to get a will made while he was in the hospital." The objection to this statement was overruled and it was allowed to stand. Both of these statements attributed by Horton to Sara Grate are to the same effect and, if objectionable, are equally so.

In substance, the conversations related by Horton as having taken place between himself and Sara Grate were that Horton and Sara Grate conceived a plan of suggesting to Evreard Belfield that he make a will treating the nephew and nieces on Agnes Belfield's side of the family and the nephew and niece on testator's side of the family equally; that this plan was formulated after the death of Agnes Belfield when they learned that unless Evreard Belfield made a new will, all of the property would go to the testator's heirs, the plaintiffs, Russell Belfield and Helen Falkenberg; that they went so far as to draft a simple form

of a will with the idea of suggesting it to the testator, but Horton was to have no part in making the suggestion as in his words: "Well, Sara didn't seem to want any help with that part. She thought she could handle that." Horton depicts himself as playing a minor part while Sara Grate has the role of one ready and able to influence Evreard Belfield; and, if Horton's testimony is to be believed, he was double-crossed by Sara Grate, as the will in question is nothing like the will allegedly discussed by them. Horton further testified to a conversation which was supposed to have taken place in the kitchen of the Belfield home the day before Evreard Belfield was taken to the hospital. At that time Horton says he asked Sara if she had made any progress toward drawing up the will. She is reputed to have said that she had not; that since the day Evreard had gone to the doctor, he had been in no condition to talk about a will; that her primary concern was to get him "happy" again before she approached him about the will. As part of the same conversation Sara is supposed to have said that Evreard would have to have oxygen soon or he would "croak," and that she did not want him to go to the hospital because it would be harder to get a will made there. Horton also testified to a conversation he had with Sara after Belfield was in the hospital and on the very day the purported will was executed, wherein he asked her whether she had made any progress toward the will, and that she replied that she had not; that she had seen two lawyers and there was more to it than he thought. Horton stated that he then said that Evreard didn't look very good to him and that it appeared that it was almost too late, and that Sara then told him that he might as well go as she was "going to work on Evreard." On objection, the latter part of this conversation was ordered stricken. The statements attributed to Sara Grate by Earl Horton are replete with admissions or declarations.

Without further detailing the testimony of Earl Horton,

it appears that the statements ascribed to Sara Grate have a direct bearing on the issues of both undue influence and testamentary capacity and, if believed, constitute admissions on her part that testator lacked testamentary capacity, could be influenced and that she intended to influence him in the making of his will. Though called under section 60 of the Civil Practice Act as an adverse party, Earl Horton, a defaulted defendant and a disappointed beneficiary, appears to have been more than willing to tell his story even to the extent of volunteering statements when no questions were asked. It should also be noted that Sara Grate was incompetent to testify directly in her own behalf, or in rebuttal, under section 2 of the Evidence Act, (Ill. Rev. Stat. 1953, chap. 51, par. 2,) and there was no one to deny, contradict, or qualify any of Horton's testimony, as all conversations were supposed to have taken place when he and Sara Grate were alone. If, therefore, the statements or admissions were objectionable for the reasons assigned at the trial, they were doubly damaging because they could not be refuted.

This court has consistently followed the rule that statements or admissions made by a devisee or legatee concerning the testamentary capacity of a testator, or acts of undue influence in procuring the execution of a will, while admissible where the interests of all the devisees or legatees are joint, are not admissible where their interests are separate and no conspiracy is charged. (*Ginsberg* v. *Ginsberg*, 361 Ill. 499; *Powell* v. *Bechtel*, 340 Ill. 330; *McCune* v. *Reynolds*, 288 Ill. 188; *McMillan* v. *McDill*, 110 Ill. 47.) This rule is adhered to in other jurisdictions and represents the great weight of authority elsewhere. (Annotation, 167 A.L.R. 13, 37.) The reason for the rule is that the declarant is not the only one interested in the issue to be tried and that it would be unjust to allow the interests of one beneficiary to be affected by the admissions or declarations against interest of another with whom he is not in privity;

that to permit such testimony would allow one beneficiary, whose interest might amount to only a small part of the estate, by his statements to affect injuriously the interests of the other beneficiaries who might be entitled to the greater part of the estate. Counsel for plaintiffs do not contend that the interests in the will in question are joint. The fact is that separate farms are devised to the defendants Grate, Coop, Wilson, Markstrom and Silvius. Nor is it contended that any of these defendants conspired with Sara Grate. The complaint does not allege and there is no proof of such a conspiracy. The only person charged with undue influence is Sara Grate. To support their contention that the testimony in question was admissible, plaintiffs rely upon the decision of this court in *Latham* v. *Rishel,* 384 Ill. 478. A careful study of the decision in that case reveals that it is not authority for the proposition that Horton could be called to testify concerning statements and admissions on the part of Sara Grate. The *Latham case* holds that the plaintiffs in that will contest had the right to call Rishel, the named executor and principal beneficiary, under section 60 of the Civil Practice Act, and examine him as to his acts and conduct touching upon matters of alleged undue influence, and that section 2 of the Evidence Act and the general rule above discussed do not preclude such action. In that opinion we made it clear that the rule in the *Ginsberg* and other cases related to declarations and admissions and that they were not authority for the proposition that under the circumstances Rishel could not be called and examined as to his own acts and conduct. While the *Latham case* is authority for the proposition that Sara Grate might have been called by plaintiffs in this case and examined as to her acts and conduct, it is not authority for the proposition that Horton might be called to testify as to declarations or admissions by her to the prejudice of the other defendants whose interests were separate. The difference in the two situations is apparent.

Aside from the distinction between declarations and admissions and testimony as to acts and conduct, the *Latham case* involves a situation in which the person charged with undue influence was called adversely to testify, and his incompetency as a witness thereby removed, whereas in the instant case Earl Horton testified as to admissions and declarations made by Sara Grate, the party charged with undue influence, and she was unable, because incompetent, to refute any of the testimony. We believe that under these circumstances the rule announced in the *Ginsberg case,* and the other cases cited, is applicable, and is required for the protection of the defendants, other than Sara Grate, whose interests are separate, and who are charged with no misconduct. To hold otherwise would abrogate the long established rule in this State and align this court against the great weight of authority elsewhere. This court is cognizant of criticism urged against this rule (Wigmore on Evidence, Third Edition, sec. 1081; Annotation, 167 A.L.R., 13, 49;) but is without suggestion of a more salutary principle of law to be applied under these circumstances. We hold that the testimony of Earl Horton as to the declarations and admissions of Sara Grate touching upon matters of alleged undue influence and lack of testamentary capacity was not admissible, and we quote from the case of *McMillan* v. *McDill,* 110 Ill. 47, at page 50, "There is no doubt but this evidence had an important bearing with the jury in the decision of the case, and if the evidence thus admitted was incompetent, for this error alone, the judgment will have to be reversed."

The attorney who drafted the will instructed Sara Grate to take his wire recorder to the hospital and make a recording of the conversations with the testator prior to the execution of the will. She followed these directions and made a recording which consisted of her reading of the will to the testator, his statements, if any, at the end of each paragraph, together with his responses to specific

questions including whether he knew where he was, the number of farms he owned, and whether he wanted to sign the will. At the trial the entire spool containing the recording was tendered in evidence after an offer of proof outside the presence of the jury. No objection was made by plaintiffs' counsel as to the form of the offer of proof. The court rejected the wire recording, saying: "My notions are that Sara Grate is not a competent witness and that the reading of the will and his responses are not competent evidence. I can't see how that can be admitted in evidence, and I will so rule on that." Apparently the court reasoned that since Sara Grate was not a competent witness in her own behalf under section 2 of the Evidence Act, her reading of the will, and the questions and answers as recorded were therefore incompetent. We cannot agree that the recording was incompetent for that reason. In *Garrus* v. *Davis,* 234 Ill. 326, the trial court excluded the testimony of a witness to a conversation between the plaintiff contestant and the testatrix on objection that the witness should not be permitted to testify to what was said by the plaintiff contestant, which obviously referred to plaintiff's incompetency under section 2 of the Evidence Act. This court indicated that the testimony as to the conversation was competent, and reversed the judgment for that and other errors. In the *Garrus case,* though the plaintiff was incompetent to testify to the conversations she had with testatrix because of said provisions of the Evidence Act, a competent witness, overhearing the conversations, was not disqualified for that reason. So in the present case if a competent person had witnessed the occurrences and overheard the conversations attendant upon the execution of the will, he would not be disqualified by the provisions of section 2 of the Evidence Act from relating those occurrences and conversations though they might involve questions asked or statements made by Sara Grate, who was an incompetent witness in her own behalf under the act.

Does the fact that we have a wire recording instead of a human witness make a difference? We think not. There are comparatively few decisions on the admissibility of sound recordings in evidence, but most of the courts which have considered the question agree that such evidence is admissible if the proper foundation has been laid to assure the authenticity of the recording and its consequent reliability. (Annotation: 168 A.L.R. 927.) Such recordings have been received in civil (*Paulson* v. *Scott*, 260 Wis. 141, 50 N.W.2d 376; *Boyne City, G. & A. R. Co.* v. *Anderson*, 146 Mich. 328, 109 N.W. 429.) and criminal cases, (*Commonwealth* v. *Clark*, 123 Pa. Super. Ct. 277, 187 Atl. 237; *People* v. *Hayes*, 21 Cal. App.2d 320, 71 P.2d 321; *State* v. *Raasch*, 201 Minn. 158, 275 N.W. 620; *State* v. *Perkins*, 355 Mo. 851, 198 S.W.2d 704; 168 A.L.R. 920.) and their validity recognized by eminent text writers. (Wigmore on Evidence, 3d ed. sec. 795a, subpar. 3.) In *Boyne City, G. & A. R. Co.* v. *Anderson*, 146 Mich. 328, 109 N.W. 429, the recording was considered a mechanical witness. There a phonograph was permitted to be operated in the presence of the jury to reproduce sounds claimed to have been made by the operation of trains in proximity to respondent's hotel. The court observed that the ground for receiving such recordings is stronger than for receiving evidence of telephonic conversations since there is not only proof by the human witness of the making of the sounds to be reproduced, but a reproduction by the mechanical witness of the sounds themselves. In the case at bar, the fact that the recording is a mechanical rather than a human witness should not render the evidence incompetent provided there is proper foundation for its admission.

On this appeal, plaintiffs' counsel argue want of proper offer of the wire recording and lack of adequate foundation for its admission. These objections were not made in the trial court and the recording was not excluded for such reasons. Counsel for defendants outlined an offer of proof

to the court out of the presence of the jury, designed to lay a proper foundation for the admission of the recording. This offer included the proposed testimony of Walls Schreffler, an expert on such devices; that of Mrs. Di Domenic, one of the nurses who witnessed the will, and Samuel Saxon, the attorney who drafted the will and whose wire recorder was used. Counsel for defendants then said they would offer the entire spool in evidence. The court then ruled the wire recording inadmissible on the basis of section 2 of the Evidence Act. In view of the court's ruling, the act of calling these witnesses before the jury, the formal marking and tendering of the spool, and its identification was not required. Had the objection made for the first time in this court been interposed at the trial, counsel for the defense would have had an opportunity to secure the trial court's ruling thereon, and to call additional witnesses, if they were needed, to lay a proper foundation for this evidence. It is our conclusion that the wire recording was not inadmissible for the reason given by the trial court and that the question was properly preserved for review.

At the hearing upon the petition to admit the will to probate in the county court of Kendall County, Sara Grate was called and fully examined by counsel for the contestants under section 60 of the Civil Practice Act for the purpose of proving fraud, forgery, compulsion or other improper conduct. At the trial in the circuit court the defendants offered the complete authenticated transcript of the testimony of the witnesses who testified in the county court hearing. Lorraine Di Domenic and Dorothy N. Pullman were the attesting witnesses to the execution of the will, and Sara Grate was called as above stated. The trial court admitted the transcript of the testimony of the attesting witnesses but excluded that of Sara Grate upon the objection that she was not a competent witness in her own behalf under section 2 of the Evidence Act. Error is

assigned upon this ruling. Counsel for defendants rely upon section 92 of the Probate Act (Ill. Rev. Stat. 1953, chap. 3, par. 244,) which provides, *inter alia,* that in will contest cases "An authenticated transcript of the testimony of any of the witnesses taken at the time of the hearing on the admission of the will to probate is admissible in evidence." Counsel for plaintiffs contend that present section 92 of the Probate Act is derived from section 7 of the Wills Act of 1872 which provided that the certificate of the oath of the witnesses at the time of first probate shall be admitted as evidence, and that this court held in *Lyman* v. *Kaul,* 275 Ill. 11, that under section 7 only the transcript of the testimony of the subscribing witnesses was competent. The decision in the *Kaul case* was proper under the statute then in question, but that decision is not in point here. The *Kaul case* was decided in 1916. The statute then in effect and as later amended in 1919 made it clear that only the transcript of the testimony of the subscribing witnesses was competent. This was the law until the adoption of the Probate Act in 1939. The provision of section 92 of the Probate Act was not taken from the earlier acts, and by it the legislature enlarged the scope of the prior enactments and provided that a transcript of the testimony of any of the witnesses taken on probate is admissible upon the contest of the will. Counsel are asking this court to read into section 92 an exception to the effect that the transcript of the testimony of a witness incompetent under section 2 of the Evidence Act is not admissible, though he was called in the county court under section 60 of the Civil Practice Act. Had the legislature intended such an exception it would have expressly so provided.

It is a primary rule in the interpretation and construction of statutes that the intention of the legislature should be ascertained and given effect. (*People* v. *Price,* 257 Ill. 587; 82 C.J.S., sec. 311.) "If in a statute there is neither ambiguity nor room for construction, the intention of the

legislature must be held free from doubt. What the framers of the statute would have done had it been in their minds that a case like the one here under consideration would arise is not the point in dispute." (*People ex rel. Fyfe* v. *Barnett*, 319 Ill. 403, 408.) The only legitimate function of the courts is to declare and enforce the law as enacted by the legislature, to interpret the language used by the legislature where it requires interpretation, and not to annex new provisions or substitute different ones, or read into a statute exceptions, limitations, or conditions which depart from its plain meaning. (*People* v. *Boreman*, 401 Ill. 566; *Wall* v. *Pfanschmidt*, 265 Ill. 180.) The language of the statute in question is certain and unambiguous and this court is not warranted in reading into it an exception which the legislature did not see fit to make.

Counsel for plaintiffs suggest that the fact that the county court admitted improper or incompetent evidence should not be binding upon the circuit court. This argument is predicated upon the erroneous assumption that the testimony of Sara Grate was improperly received in the county court, and sounds strange coming from the counsel who there called her under section 60 of the Civil Practice Act and insisted, over objection, that she testify. The county court correctly overruled the objection and directed Sara Grate to testify, and the evidence was competent. Section 69 of the Probate Act (Ill. Rev. Stat. 1953, chap. 3, par. 221,) clearly contemplates that testimony may be given in the county court to prove fraud, forgery, compulsion, or other improper conduct. It provides that upon the giving of certain testimony by the attesting witnesses the will is sufficiently proved to admit it to probate "unless there is proof of fraud, forgery, compulsion or other improper conduct which in the opinion of the probate court is deemed sufficient to invalidate or destroy the will." Nothing contained in section 2 of the Evidence Act prevents the admission of the transcript of evidence given in the probate

court. That statute merely says that Sara Grate is not a competent witness in her own behalf in that proceeding. But Sara Grate does not, by offering the transcript, tender herself as a witness in her own behalf in the circuit court. Nor did she testify in her own behalf in the county court. It is our opinion that the transcript of the testimony of Sara Grate given in the county court was admissible in the circuit court proceedings and that the court erred in excluding it upon the belief that section 2 of the Evidence Act precluded its admission. Ill. Rev. Stat. 1953, chap. 3, par. 244; cf. *Bley* v. *Luebeck,* 377 Ill. 50.

Defendants assigned error to instruction No. 11 given at the request of plaintiffs on the presumption of undue influence. By this instruction the jury were told that if they believed from the evidence that the will of the testator was made for the chief benefit of Sara Grate and that said Sara Grate caused the alleged will to be prepared in the absence of the next of kin of said deceased, procured the witnesses thereto, and that the mind and memory of Evreard Belfield was wearied and debilitated by long, continued and serious illness, then a presumption of law arises that the will, was the result of the undue influence of Sara Grate, which presumption must be overcome by other evidence that the execution of said will was the result of the free deliberation and judgment of the said Evreard Belfield, and that unless the jury believed from the evidence that said presumption had been overcome, they should find said will not to be the last will and testament of Evreard Belfield, deceased. Defendants' objection to this instruction is twofold: (1) that it is not based upon the evidence because the will itself shows that it was not made for the chief benefit of Sara Grate; and (2) that it fails to contain the element of fiduciary relationship without which such a presumption cannot arise.

Counsel for plaintiffs suggest that the evidence in this case shows the presence of a fiduciary relationship between

Sara Grate and Evreard Belfield. The complaint, however, charges only actual fraud and coercion on the part of Sara Grate. Therefore, the only instructions relating to undue influence which could properly be given in this case must be based on actual fraud or coercion. This court has frequently pointed out the distinction between undue influence arising from coercion or active fraud and undue influence resulting from the abuse of a fiduciary relationship existing between the parties. (*Weston* v. *Teufel*, 213 Ill. 291, 299.) Where a party bases his case upon the existence of a fiduciary relationship, he should plead such relationship in the trial court and his failure to do so precludes making such claim on appeal. *Wood* v. *Armstrong*, 401 Ill. 111, 113.

The latest pronouncement of this court upon the subject of presumption of undue influence is found in *Redmond* v. *Steele*, 5 Ill. 2d 602 where, at page 610, it is said: "It is only where a fiduciary relationship exists between the testator and the devisee who received a substantial benefit from the will, where the testator is a dependent and the devisee a dominant party, and where the testator reposes trust and confidence in the devisee and the will is written or its preparation procured by the devisee that a presumption of undue influence arises. (*Wiik* v. *Hagen*, 410 Ill. 158; *Mitchell* v. *Van Scoyk*, 1 Ill. 2d 160.)" At page 612 of the same opinion it is stated: "In all the cases cited and relied upon by the contestants, the rule is laid down that requires the following: (1) That there must be fiduciary or confidential relationship, (2) that the devisee is the dominant and the testator is the dependant party, and (3) that the will was procured by and in favor of the fiduciary through the use of his dominant fiduciary or confidential relationship." This is a clear statement that absent a fiduciary relationship no presumption of undue influence can arise.

Plaintiffs rely upon the decisions of this court in

*England* v. *Fawbush,* 204 Ill. 384; *Sulzberger* v. *Sulzberger,* 372 Ill. 240; *Friberg* v. *Zeutschel,* 379 Ill. 480 and *Mitchell* v. *Van Scoyk,* 1 Ill. 2d 160. A careful reading of *England* v. *Fawbush* reveals nothing inconsistent with the decision of this court in *Redmond* v. *Steele.* In *England* v. *Fawbush,* 204 Ill. 384, the complaint charged lack of testamentary capacity and improper restraint and undue influence by Perry Joseph England, one of the plaintiffs in error. At page 393 of the opinion this court stated: "The active agency of the beneficiary of a will in procuring it to be drawn, especially in the absence of those who have at least equal claims upon the justice of the testator, and where the testator is enfeebled by old age and disease, is a circumstance which indicates the probable exercise of undue influence. Where the mind is wearied and debilitated by long, continued and serious and painful sickness, it is susceptible to undue influence and is liable to be imposed upon by fraud and misrepresentation. 'The feebler the mind of the testator, no matter from what cause,—whether from sickness or otherwise,—the less evidence will be required to invalidate the will of such person'." We have examined the instructions considered in that opinion and none involved the question of a presumption of undue influence. All were based upon actual fraud or coercion. That opinion as quoted, holds that where actual fraud or coercion is charged, the active agency of the beneficiary of a will in procuring it to be drawn, especially in the absence of those who have at least equal claims upon the justice of the testator and where the testator is enfeebled by old age or disease, is a circumstance which indicates the probable exercise of undue influence. This rule is stated in the same language in *Mitchell* v. *Van Scoyk,* 1 Ill. 2d 160, 172 and *Donnan* v. *Donnan,* 256 Ill. 244, 251.

While there may be language in the opinions in the *Sulzberger* and *Friberg cases* which indicates that a pre-

sumption of undue influence may arise in the absence of a fiduciary relationship, such language was unnecessary to the result. This court referred to those opinions in *Challiner v. Smith,* 396 Ill. 106, at page 111: "In both *Sulzberger* v. *Sulzberger,* 372 Ill. 240 and *Friberg* v. *Zeutschel,* 379 Ill. 480, the beneficiary was present and was a principal beneficiary, and did occupy fiduciary or confidential relationships which invoked the presumption claimed to exist here."

In *Mitchell* v. *Van Scoyk,* 1 Ill. 2d 160, this court referred to the *Sulzberger* and *Friberg cases* and recognized that the language of those cases announced that the presumption arises irrespective of the existence of a fiduciary relationship between the parties, and at page 173 stated: "But we believe the plaintiff's case is further strengthened by the evidence of a fiduciary relationship between the parties. Where a fiduciary and dominant party, in whose behalf a will is drawn, is directly connected with the making of the will by its preparation or by participating in its preparation and execution, proof of these facts establishes *prima facie* the charge that the will resulted from undue influence exercised by the beneficiary. (*Wiik* v. *Hagen,* 410 Ill. 158; *Dial* v. *Welker,* 328 Ill. 56; *Gum* v. *Reep,* 275 Ill. 503; *Yess* v. *Yess,* 255 Ill. 414; *Leonard* v. *Burtle,* 226 Ill. 422.)" Thus, in the case of *England* v. *Fawbush,* this court did not consider the presumption of undue influence, and in all the remaining cases relied upon by plaintiffs a fiduciary relationship, together with the other circumstances necessary to raise the presumption, was present. Any language in those opinions indicating that such a presumption might arise absent a fiduciary relationship was unnecessary and is expressly repudiated. It follows that plantiffs' instruction No. 11 did not correctly state the law and the giving of that instruction was error.

The assignment of error based upon alleged prejudicial conduct of plaintiffs' counsel centers about statements made

in argument to the jury to which no objections were made. The rule generally adopted is that such assignments of error will not be considered on appeal unless objection to the alleged prejudicial argument has been made in the trial court, a ruling of the court obtained and the record showing the objection and the ruling preserved. (*Gaddie* v. *Whittaker*, 344 Ill. 149; *North Chicago Street Railway Co.* v. *Cotton*, 140 Ill. 486.) Although that may be the general rule and may suffice to secure justice in a majority of cases, some of the remarks of counsel in the argument in this case were so highly prejudicial as to be worthy of our comment and censure. The defendants were, at various times during the argument, characterized as "thieves," "usurpers," and "defrauders." These appellations were in the plural and referred to all of the defendants even though there was no evidence that the defendants Coop, Markstrom, Wilson or Silvius had anything to do with the making of the will. Sara Grate was the only person charged with undue influence. Repeated references were made to Samuel Saxon, one of defendants' counsel, as "Sammy" Saxon. One of the attorneys for plaintiffs told the jury that he had never drawn a will where he had to ask a doctor if the testator was competent, as Saxon had done in this case, and inferred that Saxon was not a reputable attorney. But plaintiffs' attorneys not only belittled opposing counsel, Saxon, they also spoke with praise about their own methods of handling such matters and their high standards of ethics and conduct. One of plaintiffs' counsel, a county judge from a neighboring county, advised the jury that he had extensive experience in his court in dealing with wills, and that it was his duty to uphold wills. He inferred that there must be something wrong with this will or he would not be in the circuit court representing the contestants.

So much of this argument was prejudicial and unwarranted that a duty devolved upon the court to inject

itself into the proceedings sufficiently to see that the litigants received a fair trial. It is always the duty of a trial court to control the proceedings to the extent necessary to insure this result. This court has said that in discharging this duty it is not always enough that the court sustain objections, but in a proper case it should act promptly to stop misconduct. (*Bishop* v. *Chicago Junction Railway Co.* 289 Ill. 63.) In a clear case this court will reverse a judgment because of improper conduct and prejudicial statements of counsel even though the trial court has sustained objections thereto, rebuked counsel, and directed the jury to disregard such statements. (*Appel* v. *Chicago City Railway Co.* 259 Ill. 561.) If the argument of counsel is seriously prejudicial, a court should, of its own motion, stop the argument and direct the jury not to consider it. (*McWilliams* v. *Sentinel Publishing Co.* 339 Ill. App. 83; *Rudolph* v. *City of Chicago,* 2 Ill. App.2d 370.) If prejudicial arguments are made without objection of counsel or interference of the trial court to the extent that the parties litigant cannot receive a fair trial and the judicial process stand without deterioration, then upon review this court may consider such assignments of error, even though no objection was made and no ruling made or preserved thereon.

Since we are of the opinion that the decree in this case must be reversed and the cause remanded for a new trial for the reasons already given, it will not be necessary to discuss the other assignments of error. The decree of the circuit court of Kendall County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*