*In re* ESTATE OF JOHN H. MILLER, Deceased (John L. Miller, Plaintiff-Appellant, v. Charles J. Miller, Defendant-Appellee).

Second District   No. 2—88—1264

Opinion filed October 2, 1989.

Richard T. Wimmer, of Klein, Thorpe & Jenkins, Ltd., of Chicago (J. Scott Perry, of Downers Grove, and David A. Izzo, of counsel), for appellant.

William J. Connell, of Elmwood Park, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, John L. Miller, filed a petition to contest the will of his father, John H. Miller, that was admitted to probate. Decedent's other son, Charles Miller, defendant, is executor. Plaintiff alleged (1) decedent was not of sound mind and memory when he signed the will; and (2) defendant asserted undue influence over decedent. Plaintiff's motion for a directed verdict at the close of the evidence was denied. The jury found that the will was valid, and plaintiff's motion for judgment notwithstanding the verdict or a new trial was denied.

On appeal, plaintiff raises essentially three issues: (1) whether the defendant was required under a will-contest proceeding to prove that decedent was of sound mind and memory when he signed the will; (2) whether the trial court erred in ruling that a tape recording consisting of telephone answering machine messages left by decedent was inadmissible under the Dead Man's Act (Ill. Rev. Stat. 1987, ch. 110, par. 8—201); and (3) whether the jury's verdict should be reversed because it is against the manifest weight of the evidence. We affirm.

At trial, the parties stipulated that a copy of decedent's will dated June 6, 1985, was a true and accurate copy of the last will and testament of decedent. The will left decedent's entire estate to his son, Charles, and specifically excluded plaintiff from receiving any of the estate. The will was admitted into evidence along with an attached witnesses' affidavit.

The testimony of the witnesses is summarized as follows.

Plaintiff testified that in October 1984 his father called him and left two messages on his answering machine. Up until this time he spoke with his father a couple times a year. After the phone messages in October, he spoke with his father every weekend and holidays. On

April 20, 1985, he left his home in Florida to visit his father in Illinois. His father, 87 at this time, appeared weak and tired. He was forgetful and could not carry on a conversation. He had a lesion on his nose from cancer. In May 1985, plaintiff visited his father again to take him to the hospital for an operation on his nose. His father, however, refused to go to the hospital. On May 5, 1985, his father told a police officer that plaintiff had tried to kidnap him. Plaintiff said he had not tried to kidnap his father. A week later, his father called and said that his son Charles was trying to poison him by sprinkling powder in his apartment and putting toothpicks in his heels; he told him he called the fire department.

Police officer Philip Wander testified he responded to a call for assistance at decedent's residence on August 12, 1985. Decedent complained to him that his son was placing caustic material in his apartment, causing his eyes to water and causing him difficulty breathing. Wander found nothing in the apartment to cause these symptoms. He made a referral to the health and human resources department because he believed decedent was having some mental problems.

Fire Captain Charles Staffeldt testified that on August 7, 1985, he went to decedent's residence to check on a report of a smell or smoke in the residence. Decedent complained that his eyes were burning from something in his apartment. Staffeldt was unable to find any fumes or smoke in the apartment.

Dr. John Adams testified for plaintiff as an expert in psychiatry. He had reviewed decedent's hospital records, records from a nursing home, and a tape of messages left by decedent on plaintiff's answering machine. One record from a hospital dated August 30, 1985, reported that decedent suffered from senile dementia. The report stated decedent had a history of becoming increasingly confused over the last several months. Another record from a nursing home dated September 18, 1985, reported decedent was at times confused and hallucinated. He was fearful, suspicious, and demanding. It also stated that the date of the onset of confusion was July 1985. Dr. Adams testified that the conditions of decedent did not arise overnight, but were reflective of an extended period of development. It was his opinion decedent did not have the capacity to appreciate the nature of his assets and to make a considered plan for their distribution upon his death when he made his will on June 6, 1985.

Charles Miller testified for defendant. He spoke to his father every day and visited him almost every Saturday up until August 30, 1985, when his father was hospitalized. In September and October 1985, he and his wife added their signatures to decedent's bank ac-

count signature cards, but they had no authority over decedent's accounts prior to September 1985. He identified a group of canceled checks from decedent's account dated from January 2, 1985, to September 7, 1985. He testified that with the exception of the last five, which were written by him at the end of August and beginning of September, the checks were written and signed by decedent. The last check written by decedent was a check to Illinois Bell dated August 10, 1985. Charles testified that he contacted his attorney to draft the will for decedent, and the will was signed in Charles' house. He never discussed the contents of the will with his father prior to June 6, 1985.

John Knox testified he witnessed decedent sign his will on June 6, 1985, at Charles Miller's house. He stated he had a conversation with decedent after he witnessed the signing and that decedent actively participated in the discussion.

Helen Knox testified she witnessed decedent sign his will on June 6, 1985. She stated she stayed at the house after witnessing the will and had a conversation with decedent.

■ Plaintiff first contends the trial court should have granted a directed verdict and judgment notwithstanding the verdict because defendant failed to rebut his *prima facie* case. A verdict should be directed only when all of the evidence viewed most favorably to the opponent overwhelmingly favors the movant so that no contrary verdict could stand. (*Sloan v. O'Dell* (1987), 159 Ill. App. 3d 268, 272; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494.) Plaintiff argues that after he established a *prima facie* case, the burden of proof shifted to defendant to prove the validity of the will by proving the statutory requirements of section 6—4 of the Probate Act of 1975 (Ill. Rev. Stat. 1987, ch. 110½, par. 6—4), specifically, that decedent was of sound mind and memory when he signed the will (Ill. Rev. Stat. 1987, ch. 110½, par. 6—4(a)(3)).

■ Plaintiff's interpretation of the burden of proof in a will-contest proceeding is misguided. Plaintiff cites *Sternberg v. St. Louis Union Trust Co.* (1946), 394 Ill. 452, which held that the validity of a will in a will-contest proceeding is tried *de novo*, and the earlier order of admitting the will is of no force. (*Sternberg*, 394 Ill. at 461.) In a later case, however, the supreme court explained that a proponent of a will is not required in a will-contest proceeding to prove the statutory requirements of the will. In *Metzger v. Mowe* (1956), 8 Ill. 2d 274, 277-79, the court stated:

> "Plaintiff's theory seems to be based upon the premise that
> upon the filing of a suit to contest a will the order of probate

previously entered by the probate court is null and void and whether the contestant is or is not able to sustain his complaint the proponent of the will must proceed to get a finding in the contest proceeding that the will is the will of the deceased and a new order of probate.

Prior to the Civil Practice Act which became effective January 1, 1934, there might have been merit in plaintiff's contention. Formerly, in a will contest suit, the proponent of the will was required to make a *prima facie* case by showing the will and its execution complied with the statutory requirements. [Citation.] This procedure, however, has been changed by statute and by the rules of this court.

* * *

*** In *Friberg v. Zeutschel*, 379 Ill. 480, at page 486, we stated: 'The distinction between the old practice and the present is that formerly the proponent had to establish the *validity* of the will and its due execution, which necessarily required its production and identification by the attesting witnesses. The present rule and statute, however, makes the *invalidity* of the will the issue, and requires the contestant to make such proof before the proponent makes his.' '' (Emphasis in original.)

It is clear from *Metzger* that a will proponent is not required to prove the will in a will-contest proceeding. Plaintiff contends, however, that this case is distinguished because unlike *Metzger*, he established a *prima facie* case. Nothing in *Metzger* suggests, however, that its analysis would have been different if the contestant had made a *prima facie* case. The clear import of *Metzger* is that a will proponent is not required to prove the statutory requirements of a will in a will-contest proceeding.

■ If, *assuming arguendo*, plaintiff also means to argue that defendant had the burden to rebut his *prima facie* case, though not necessarily by proving the statutory requirements, this also is not correct. The statute does not require this, nor does common law. The relevant part of the will-contest statute provides:

> "The contestant shall in the first instance proceed with proof to establish the invalidity of the will. At the close of the contestant's case, the proponent may present evidence to sustain the will." (Ill. Rev. Stat. 1987, ch. 110½, par. 8—1(c).)

The statute provides that the proponent "may" present evidence to sustain the will. The use of the word "may" establishes that the legislature did not intend to require the proponent to present evidence in

response to the contestant. Nor do general principles of common law require a defendant to introduce evidence contrary to plaintiff's *prima facie* case before the case may go to the trier of fact. A defendant may submit the issue to the trier of fact on plaintiff's evidence alone. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §301.4 (4th ed. 1984); *Caley v. Manicke* (1961), 29 Ill. App. 2d 323, 328-29.

■ Even if we agreed with plaintiff's outdated interpretation of the law, we would still find for defendant on this issue since we find, contrary to plaintiff's assertions, that the record contained evidence, which, if believed, proved decedent was of sound mind and memory. The witnesses' affidavit attached to the will was admitted into evidence. In this affidavit John and Helen Knox stated they believed decedent to be of sound mind and memory when he signed the will. Section 6—4 of the Probate Act provides that the statements of a witness to prove a will may be made by an affidavit which is signed by the witness at or after the time of attestation and which forms part of the will or is attached to the will. (Ill. Rev. Stat. 1987, ch. 110½, par. 6—4(b).) Furthermore, section 8—1 of the Probate Act provides that an affidavit of any witness received in evidence under section 6—4 is admissible in a will-contest proceeding. (Ill. Rev. Stat. 1987, ch. 110½, par. 8—1(c).) Thus, there clearly was probative evidence to prove decedent's sound mind and memory.

Plaintiff argues in his reply brief that the will and affidavit were not admitted into evidence. This is blatantly inaccurate. The record shows that the will and attached affidavit were tendered to the court by plaintiff as plaintiff's exhibit No. 4. A stipulation was read that the parties agreed that the document was a true and accurate copy of the last will and testament of decedent, and the document was admitted by the court.

Next, plaintiff contends the court erred in denying admission of a cassette tape containing several telephone messages left by decedent on plaintiff's telephone answering machine. The trial court ruled that admission of the tape was barred by the Dead Man's Act (the Act) (Ill. Rev. Stat. 1987, ch. 110, par. 8—201). The Act provides:

> "In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability ***." Ill. Rev.

Stat. 1987, ch. 110, par. 8—201.

■ Plaintiff, citing *Muka v. Estate of Muka* (1987), 164 Ill. App. 3d 223, contends that the Act does not apply to taped statements of the decedent. In *Muka*, this court held that the Act prohibits an interested party from testifying in his own behalf regarding a conversation with the deceased, but does not prohibit the introduction of a tape recording made by the decedent himself. (*Muka*, 164 Ill. App. 3d at 231.) In *Muka*, decedent had made a tape of what he intended to be his last will and testament. (*Muka*, 164 Ill. App. 3d at 226.) *Muka* is consistent with a supreme court case which held that a taped conversation between decedent and an interested party was not barred by section 2 of the Evidence Act (Ill. Rev. Stat. 1953, ch. 51, par. 2), the precursor to the Dead Man's Act. (*Belfield v. Coop* (1956), 8 Ill. 2d 293, 303-04.) In *Belfield*, the defendant made a recording of a conversation she had with decedent in which decedent responded to her reading of the will and other questions she posed regarding his estate. The court drew an analogy comparing a tape recording to a competent witness who overhears a conversation between decedent and an incompetent witness. Since a competent witness could testify to the conversation (*Garrus v. Davis* (1908), 234 Ill. 326), the court held a tape recording was likewise admissible provided that a proper foundation was made. (*Belfield*, 8 Ill. 2d at 303-04.) Thus, in *Muka* and *Belfield* the tape was admissible because it was not testimony by an interested party about a conversation or event in the presence of decedent.

Defendant contends, nonetheless, that the taped messages in this case are barred by the Act. At trial defendant's theory of defense was that decedent was of sound mind and memory on June 6, 1985, when he signed the will, and any evidence to the contrary was evidence of decedent's incapacity sometime other than June 6, 1985. Thus, defendant argues that the tape cannot be admitted without a proper foundation to show when the messages were left by decedent. Defendant contends plaintiff is the only one who can testify to this, and since the purpose of the Dead Man's Act is to remove the temptation of a survivor to testify to matters which cannot be answered by reason of death of decedent (*In re Estate of Segur* (1972), 5 Ill. App. 3d 459, 461-62), plaintiff may not testify to this information.

We are persuaded by this argument. Our review of the tape shows that it is impossible to tell from the tape when decedent left these messages. The tape consists of 14 messages left by decedent. Plaintiff contends that the messages were left over a period from October 24, 1984, to June 30, 1985. In messages left, according to plaintiff, on

November 12 and 24, and December 19, 1984, decedent talks in vague terms about having just made a will. (This appears to be in reference to a prior will that left plaintiff and defendant each half of the estate. This will was not admitted into evidence.) On May 31, 1985, according to plaintiff, decedent talks about going to defendant's house for dinner. Then on June 7, 1985, according to plaintiff, decedent says someone is trying to hurt him and that defendant is involved in it. He says he is being railroaded. He also says that the bank account is in trouble "on account of a lot of signatures, and it's got to be changed." In the last message, according to plaintiff, on June 30, 1985, decedent called to say everything was all right, but he then stated that "they are scheming on something." He asked for a lawyer in case "they" tried to send him to a nursing home.

The only person who can testify to when decedent left these messages is the plaintiff. The only one who can dispute the plaintiff is decedent. Plaintiff's testimony about the dates of these messages cannot be allowed under the Act. The Act bars testimony by an interested party to any conversation or event in the presence of decedent. Even assuming *arguendo* that a taped phone message may not be termed a conversation, plaintiff's testimony would still be barred as testimony about an event in the presence of the decedent. In *Manning v. Mock* (1983), 119 Ill. App. 3d 788, 799, the court, after noting that no prior decisions had interpreted the word "event" as used in the current statute, simply looked to the dictionary definition which defined "event" as a "happening or occurrence" (Webster's New World Dictionary 485 (2d college ed. 1976)). Decedent's act of leaving a message on a phone answering machine is a happening or occurrence. Thus, testimony by plaintiff on his own behalf about that happening or occurrence is barred by the Act. Therefore, whether the phone messages are called a conversation or an event, plaintiff cannot testify to the dates of these messages. Since plaintiff cannot testify to the dates, there is no evidence to show when the messages were made. Thus, the messages lack the proper foundation for admission.

■■ ■ In his final issue, plaintiff contends the jury's verdict is against the manifest weight of the evidence. A verdict is against the manifest weight of the evidence where it is palpably erroneous and wholly unwarranted, or appears to be arbitrary, unreasonable, and not based upon the evidence. (*Sloan*, 159 Ill. App. 3d at 272.) Plaintiff's sole contention is, again, that defendant failed to prove decedent was of sound mind and memory when he signed the will. As already discussed, the affidavit attached to the will was admitted into evidence. This evidence is sufficient to support a jury verdict for defendant.

Thus, there is no merit to plaintiff's contention.

The decision of the circuit court denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial is affirmed.

Affirmed.

WOODWARD and LINDBERG, JJ., concur.