AARDVARK ART, INC., Plaintiff-Appellee, v. LEHIGH/STECK-WARLICK, INC., Defendant-Appellant.

Second District   No. 2—90—0441

Opinion filed April 16, 1991.—Modified on denial of rehearing May 30, 1991.

Howard R. Wertz and Frank J. DeSalvo, both of Botti, Marinaccio, DeSalvo & Tameling, Ltd., of Oak Brook, David A. Shapiro, of Pollak & Hoffman, Ltd., of Chicago, and Irving S. Segal and John E. McKeever, both of Schnader, Harrison, Segal & Lewis, of Philadelphia, Pennsylvania, for appellant.

Robert E. Jones, of Greene, Jones & Brisske, of Wheaton, Kathleen T. Zellner, of Naperville, Robert G. Black, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Lisle, and D. Kendall Griffith, of Hinshaw & Culbertson, of Chicago, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, Lehigh/Steck-Warlick, Inc. (Lehigh), appeals from a $1,695,833 jury verdict for the plaintiff, Aardvark Art, Inc. (Aardvark). The defendant raises several issues regarding the trial wherein Aardvark sought to recover its alleged diminished corporate value and its estimated loss of future profits. We reverse and remand.

The facts elicited during trial are as follows. In 1974, Gerald McGlothlin started a business called Able Art (Able) to sell framed art reproductions to department stores. In 1978, McGlothlin formed Aardvark as a separate division of Able to sell unframed prints. In 1981, McGlothlin incorporated Aardvark as a separate entity.

The businesses were organized so that McGlothlin, on behalf of Aardvark, contracted with artists for reproduction rights to their artwork. He then took the artwork to a service that would process the image into "transparencies" or "color separations." McGlothlin returned the original art to the artist and took the color separations to a printer for reproduction. Aardvark sold the art reproductions.

Before Aardvark was separately incorporated, Able owned the business' supply of color separations. When McGlothlin incorporated Aardvark in 1981, Able transferred all of its ownership interest in the business' color separations to Aardvark.

In 1979 or 1980, Lehigh's president, Gus Ivkovic, began soliciting Able's business "under their Aardvark *** division." Lehigh possessed a state-of-the-art press which would allow it to do both color separation and printing for Able. Lehigh agreed to take the original artwork, to separate its colors, and then to print prints. Lehigh agreed to "open credit terms" with Able.

In the spring of 1981, McGlothlin sought to place a 100-page catalog of Aardvark's color separations in the July annual master issue of "Decor" magazine. McGlothlin discussed his marketing plan and the catalog printing deadline with Ivkovic. It was agreed that Lehigh would make miniature color separations of Able's and Aardvark's prints.

Lehigh did not meet the original deadline for the "Decor" magazine insertion. However, "Decor" delayed its publication and Aardvark's advertisement was published. Aardvark received an "avalanche" of orders, and McGlothlin arranged with Lehigh that Lehigh produce and deliver 100,000 prints from color separations by August 10, 1981.

The prints were not ready by August 10, but were completed five to six weeks thereafter. By then many of Aardvark's customers had cancelled their print orders. Furthermore, McGlothlin testified that the quality and color reproduction of the finished prints were "poor." Although he accepted the prints, he complained to Lehigh about their untimeliness and poor quality. Lehigh's final printing bill for the catalog was $46,116.45. Lehigh had originally quoted a fee of $29,000 for printing the catalog.

In October 1981, McGlothlin wrote to Lehigh, disputing the bill and informing Lehigh of his substantial losses he claimed were a result of Lehigh's failure to meet deadlines, the poor quality of the prints, and the catalog problems. In March 1982, McGlothlin and his attorney met with Lehigh to discuss past-due invoices and allowances for bad colors or late print delivery. Lehigh refused to return Aardvark's color separations until McGlothlin paid its entire bill.

On March 31, 1982, Aardvark sought a preliminary injunction to retrieve its color separations from Lehigh; the trial court denied Aardvark's request. Aardvark then filed both contract and tort claims for damages it allegedly had suffered as a result of Lehigh's withholding the color separations. Lehigh filed a counterclaim seeking payment for its printing services. Aardvark's claim for tort relief was dismissed prior to trial.

At the trial, McGlothlin opined that Aardvark's profits had suffered "tremendously" as a result of Lehigh's actions. He opined that sales declined because Lehigh had withheld the color separations. Also, McGlothlin estimated that from mid-1982 through 1988, Aardvark suffered lost profits of $5.2 million as a direct consequence of Lehigh's actions. He further opined that Aardvark would continue to lose profits because it "was in essence, ruined" since Lehigh refused to return the color separations. According to McGlothlin, it would cost Aardvark $200,000 to replace the color separations that Lehigh retained. He calculated that Aardvark had suffered a $2,882,950 loss of future profits.

Aardvark's certified public accountant, Steven Remy, testified that Aardvark had a diminished value as a result of its problems with Lehigh. He testified that he considered five years of Aardvark's actual pretax operating results, omitted reference to lost profits, and calculated that Aardvark's corporate value was diminished $559,483 by Lehigh's "interference."

At the close of Aardvark's case, Lehigh moved for a directed finding on the issue of damages for future lost profits. The trial court granted the motion, ruling that Aardvark's evidence of future lost profits, given only through McGlothlin, was insufficient to establish the basis for those lost profits. However, the court denied Lehigh's request to immediately admonish the jury to disregard evidence of future lost profits. The trial court also denied Lehigh a directed verdict on the question of the diminution of Aardvark's value.

Plaintiff's exhibit No. 36, which showed McGlothlin's calculations of Aardvark's lost profits and value diminution, was admitted into evidence. However, the trial court did not allow the exhibit to go to the

jury because it referred, in part, to lost profits. The trial court specifically ruled that regarding Aardvark's value diminution, the parties could argue from the exhibit and from the testimony.

During closing arguments, Aardvark's counsel argued, over Lehigh's objection, that the jury could award damages between the $559,483 that Remy estimated as the business' diminished value, and the $2,882,950 that McGlothlin calculated as lost profits. The jury was not instructed to disregard the evidence of lost profits. However, it was instructed that Aardvark's "recovery is limited to the diminished value of the company." The jury returned a verdict of $1,695,833 for Aardvark. After the court denied Lehigh's post-trial motion, this appeal followed.

Lehigh's first argument on appeal is that the trial court erred in failing to inform the jury of the directed finding precluding Aardvark's recovery of any future lost profits. Lehigh argues that the trial court's failure to admonish the jury to disregard McGlothlin's testimony of future lost profits constitutes prejudicial error warranting a new trial. We note that Aardvark has not challenged the trial court's directed finding on the lost profit issue.

Neither party cites an Illinois case that directly holds that failure to advise a jury of a directed finding is reversible error. However, we find the case of *Rudolph v. City of Chicago* (1954), 2 Ill. App. 2d 370, to be of assistance. In *Rudolph*, the trial court allowed the plaintiff to introduce evidence charging the defendant's attorney's subornation of perjury. (2 Ill. App. 2d at 375.) Although it later became clear that the subornation of perjury charge was baseless, the trial court did not instruct the jury to disregard the testimony. 2 Ill. App. 2d at 376.

On appeal, the *Rudolph* court found reversible error because of the trial court's failure to adequately inform the jury. It observed the following:

> "After it was apparent to the court that counsel for the plaintiff had no basis for his charge of subornation of perjury by defendant's counsel, the court should have instructed the jury that it should not consider the testimony introduced by the plaintiff on this charge, and thereafter should not have permitted that matter to becloud the issues before the jury." 2 Ill. App. 2d at 377.

■ We find that under these circumstances, as in *Rudolph*, the trial court committed reversible error by not adequately informing the jury. The trial court never specifically informed the jury that it had directed a finding on the issue of lost profits. The jury had heard McGlothlin's testimony estimating Aardvark's lost profits to be $2,882,950 and Aardvark's argument for damages based on that fig-

ure. The highest estimate of Aardvark's damages, disregarding the opinion of the value of lost profits, was Remy's estimate of $559,483. Since the jury's verdict of $1,695,833 exceeded any amount it could have reasonably awarded Aardvark if it had not been influenced by the evidence of lost future profits, the insufficiency of the instruction to the jury is apparent. Although the jury was instructed that recovery was limited to the company's diminished value, the jurors clearly were confused on the issues.

■■ If a fair trial is to be had before laymen jurors, the issues must be presented fairly and simply. (*Rudolph*, 2 Ill. App. 2d at 377; *Manninger v. Chicago & Northwestern Transportation Co.* (1978), 64 Ill. App. 3d 719, 730.) We find that the fairness of this trial was compromised when the jurors were insufficiently instructed. We find, consequently, that the case, on the issue of damages only, must be retried. (See *American National Bank & Trust Co. v. Thompson* (1987), 158 Ill. App. 3d 478, 488.) Based on our decision to reverse and remand, we need not address Lehigh's other claimed errors.

The decision of the circuit court of Du Page County is reversed, and the cause is remanded for a new trial on the issue of damages only.

Reversed and remanded.

McLAREN and INGLIS, JJ., concur.