# Illinois Official Reports

## Appellate Court

---

### *People v. Collins*, 2020 IL App (1st) 181746

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JODON COLLINS, Defendant-Appellant. |
| District & No. | First District, First Division<br>No. 1-18-1746 |
| Filed<br>Modified upon<br>Denial of rehearing | December 21, 2020<br><br>July 26, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-CR-825; the Hon. Charles P. Burns, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Samuel B. Steinberg, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, Joseph Alexander, and Mikah Soliunas, Assistant State's Attorneys, of counsel), for the People. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Walker concurred in the judgment and opinion.
Justice Coghlan dissented upon denial of rehearing, with opinion.

## OPINION

¶ 1      A jury found Jodon Collins guilty of unlawful possession of a weapon by a felon and of being an armed habitual criminal. Officers arrested Collins after a foot chase partially caught on body camera video. The trial court admitted the video over repeated objections by Collins's counsel that the audio included inadmissible hearsay statements from Chicago police officer Martin Hernandez. We agree with Collins. Officer Hernandez's statements captured on the video served no nonhearsay purpose and were inadmissible. The State's evidence almost exclusively consisted of Hernandez's testimony, further leading us to conclude the error not to be harmless beyond a reasonable doubt. We reverse and remand for a new trial.

¶ 2                             BACKGROUND

¶ 3      Chicago police officers Martin Hernandez and Joel Lopez were on patrol shortly after 1 a.m. on December 16, 2017. As they turned onto Walnut Street, they saw a group of three people standing near 3300 West Walnut Street. The group looked in the officers' direction and started walking away from them. As the officers got closer to 3300 West Walnut Street, Hernandez got out of the car to "conduct an investigation."

¶ 4      Hernandez saw one member of the group, who he identified as Jodon Collins, "turn around, look at us and immediately start running west and then northbound." Before Collins ran, Hernandez did not observe anything illegal. Specifically, he did not see anyone in the group engage in a hand-to-hand transaction, did not see Collins holding a gun, and did not see a bulge in Collins's pants. Collins ran through a vacant lot, "holding his left side," with Hernandez five-to-eight feet behind. From that distance, Hernandez saw Collins "drop a black handgun" on the ground.

¶ 5      Hernandez, after hesitating on seeing the gun, kept chase. To get to Fulton Street, Collins had to jump two fences. Hernandez also cleared the fences, but it slowed him down. From about 40 feet away, Hernandez saw Collins jump another fence into the yard of a house on Fulton Street. Once Collins hopped that fence, Hernandez lost sight of him. Hernandez went into the backyard and found Collins "crouched down" against the wall of a house. Hernandez arrested Collins and handed him off to other officers before going back to the vacant lot, where he recovered a black handgun in the spot where he saw Collins drop it.

¶ 6      Hernandez wore a body camera. To activate his body camera, he had to twice push a button on the front of it. Once activated, the camera captures "a 15-second period that it goes back and records." Over an objection from Collins's counsel, the court allowed the State to play video footage with the audio. The video starts as Hernandez runs "towards the third fence area" because, as Hernandez explained it, when the chase began, his "focus was on the person that's fleeing." Hernandez agreed that a Chicago Police Department special order required him to start the camera at the beginning of an incident and "leave it recording till the scene is safe."

¶ 7        During the video, Hernandez made the following statements on his radio, after putting Collins in custody:

"Get to that lot, dude. Hurry up. He dropped it there."

"Go back to the lot where he ran through, dude. It's right in the middle of the lot. It's black."

"It's a pistol, squad. He dropped a pistol right there in the middle of the lot over there where it started."

Before trial, Collins's counsel had moved *in limine* to bar the video, arguing that the statements it contained constituted hearsay and improper prior consistent statements. The trial court denied the motion, overruled counsel's objection to the video, and overruled counsel's objection to the video when the court formally admitted it into evidence.

¶ 8        Chicago police evidence technician Robert Franks analyzed the gun for fingerprints but found none. The State admitted certified copies of two convictions for possession of a controlled substance with intent to deliver.

¶ 9        Collins did not testify. His counsel called Sergeant Joel Lopez, who laid the foundation for the admission of his body camera video. He explained that his video starts after Hernandez had already gotten out of the car. The video shows Lopez driving for a while, eventually getting out of his car and searching unsuccessfully for the gun. Collins's counsel played the video for the jury, without objection by the State.

¶ 10        During closing argument, the State discussed Hernandez's body camera video, rhetorically asking the jury how Hernandez could have directed his fellow officers back to the lot where they found the gun if he had not seen Collins drop it there. The State then played the entire video for the jury. Collins's counsel played Lopez's body camera video for the jury, arguing that Hernandez's instructions to go back to the lot (audible in both officers' body camera videos) were confusing because it took Lopez so long to get to the right area.

¶ 11        The jury found Collins guilty of unlawful use of a weapon by a felon and being an armed habitual criminal. Collins filed a motion for a new trial, repeating the argument that the audio from Hernandez's body camera video to have been improperly admitted. The State responded that Collins's counsel had used the officers' videos for her own benefit, to which Collins's counsel replied that she had used the videos because "the court ruled that the audio portions *** would be admissible." The trial court reiterated its view that the videos were "obviously admissible" and denied the motion for a new trial.

¶ 12        The trial court merged the unlawful use of a weapon by a felon count into the armed habitual criminal count and sentenced Collins to 7½ years in the Illinois Department of Corrections.

¶ 13                                              ANALYSIS

¶ 14        Collins argues the trial court erred in admitting the audio from Hernandez's body camera because it exposed the jury to "inadmissible hearsay." Collins takes issue with several statements Hernandez made throughout the audio, telling other officers that Collins dropped a "black pistol" as he ran from Hernandez. The State responds that Collins has waived the issue by using the body camera video to his advantage in closing arguments and by introducing Lopez's body camera video. On the merits, the State argues that Hernandez's statements were not hearsay because they were only offered to explain the officers' course of conduct, not for

the truth of the matter asserted. See Ill. R. Evid. 802 (eff. Jan. 1, 2011).

¶ 15                                    Waiver Argument

¶ 16     We start by considering, and rejecting, the State's waiver argument. The State contends Collins either invited or acquiesced to the admission of Hernandez's body camera video because he later "used the 'error' " by incorporating the video into his arguments about the unreliability of Hernandez's testimony. The doctrine of invited error prevents a defendant from raising a claim on appeal where he or she "procures, invites, or acquiesces in the admission" of otherwise improperly admitted evidence. *People v. Bush*, 214 Ill. 2d 318, 332 (2005). The doctrine rests on "notions of fair play" (*People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)), and we apply it where a defendant " 'sit[s] by' " and deprives the State of the opportunity to cure any alleged error (see *Bush*, 214 Ill. 2d at 332-33 (quoting *People v. Trefonas*, 9 Ill. 2d 92, 98 (1956))).

¶ 17     Both cases the State relies on, *Bush* and *Villarreal*, involve a defendant whose counsel behaved far differently than Collins's counsel. In *Bush*, the defendant's counsel stipulated to admission of evidence that he possessed cocaine. *Id.* at 333. In *Villarreal*, the defendant on appeal attempted to attack verdict forms that his own counsel submitted at trial. *Villarreal*, 198 Ill. 2d at 227. Here, Collins's counsel (i) filed a motion *in limine* objecting to the admission of Hernandez's body camera video, (ii) objected at the time the video was offered as a trial exhibit, (iii) objected again when the trial court formally admitted the State's exhibits at the close of evidence, and (iv) preserved her objection in a motion for a new trial by expressly arguing that Lopez's video was offered only in response to the admission of Hernandez's video.

¶ 18     The record demonstrates that Collins's counsel never acquiesced to the admission of Hernandez's body camera video. Instead, she used Lopez's video and her argument to make the best of the jury viewing Hernandez's video over her objection. We reject the State's waiver argument.

¶ 19                                    Hearsay Issue

¶ 20     On the merits, Collins claims the video from Hernandez's body camera—the audio in particular—should not have been admitted because it exposed the jury to inadmissible hearsay. In the trial court, the State argued both that the statements in the body camera video were not hearsay and, in the alternative, were admissible as excited utterances. The State abandons the latter argument on appeal and asserts only that the statements in the video were not hearsay. We review the denial of Collins's motion *in limine* and the admission of the contested video evidence for an abuse of discretion. *People v. Dunmore*, 389 Ill. App. 3d 1095, 1105-06 (2009).

¶ 21     The parties focus almost entirely on the disputed hearsay character of Hernandez's body camera video. In their initial briefs, neither party discussed the applicability of the Law Enforcement Officer Body-Worn Camera Act (Act) (50 ILCS 706/10-1 *et seq.* (West 2016)), but we hypothesized about its scope in our original opinion. In a timely filed petition for rehearing, the State argues the Act renders the entire video "admissible irrespective of its compliance with hearsay rules." We requested a response from Collins, who argues the Act contains no express exception to the hearsay rule. After reviewing the Act, we agree with Collins's reading of the Act.

¶ 22 We review questions of statutory construction *de novo*. *People v. Bensen*, 2017 IL App (2d) 150085, ¶ 20, We ascertain and give effect to legislative intent by giving the statutory language its plain and ordinary meaning. *Id.* ¶ 21. Where the language is plain and unambiguous, we need proceed no further. *Id.* The Act provides that body-worn camera "recordings may be used as evidence in any administrative, judicial, or disciplinary proceeding." 50 ILCS 706/10-30 (West 2016). We see two features of the statutory text showing that the General Assembly did not intend limitless admission of body-worn camera video.

¶ 23 First, the statute does not mandate the admission of body-worn camera recordings; it provides that they "may" be used. We generally regard the legislature's use of the word "may" as permissive or directory. *People v. Robinson*, 217 Ill. 2d 43, 53 (2005). Where the subject of the verb "may" is the trial court, we read the statute to indicate "the court has discretion in [the] matter." Compare *People ex rel. Cizek v. Azzarello*, 81 Ill. App. 3d 1102, 1107 (1980) (word "may" directed at trial court indicates discretion), with *In re R.C.*, 338 Ill. App. 3d 103, 111 (2003) (word "may" directed at party indicates party has discretion to request but trial court does not have discretion to deny it if made).

¶ 24 That the statute uses the passive voice makes it a bit difficult to discern who the legislature meant as the subject of the verb phrase "may be used." While we typically think of the parties as the ones who "use" the evidence to prove their version of events, it is axiomatic that the trial court has the ultimate provenance over whether either party is permitted to "use" a particular item of evidence. *E.g.*, *People v. Becker*, 239 Ill. 2d 215, 234 (2010) ("admission of evidence is within the sound discretion of a trial court"). We find the Act to apply the phrase "may be used" to both the parties and the trial court. The parties may, but do not have to, put forward evidence of a body-worn camera recording; the trial court then may, but does not have to, allow the evidence to be admitted. Ultimately, we find the word "may" permits trial courts to exclude body-worn camera recordings where appropriate.

¶ 25 The State correctly argues that the General Assembly used the word "evidence" without any express limitation. But the General Assembly could not have put express limitations on the word "evidence"; otherwise, it would have run into potential conflicts with a host of other rules. We know this because the Act specifically sets out the types of proceedings body-worn camera recordings may be used in—"administrative, judicial, or disciplinary proceedings"— and the rules of evidence vary across these different types of proceedings. For example, in administrative proceedings, the rules of evidence for civil cases, with express exceptions, apply. 5 ILCS 100/10-40(a) (West 2016) ("The rules of evidence and privilege as applied in civil cases in the circuit courts of this State shall be followed. Evidence not admissible under those rules of evidence may be admitted, however, *** if it is of a type commonly relied upon by reasonably prudent [people] in the conduct of their affairs."). In police disciplinary proceedings, however, the rules of evidence are typically "not as rigidly applied." (Internal quotation marks omitted.) *Kelley v. Sheriff's Merit Comm'n*, 372 Ill. App. 3d 931, 933 (2007). According to the Chicago Police Board Rules of Procedure: "The Hearing Officer shall not be bound by the formal or technical rules of evidence; however, hearsay evidence shall not be admissible during the hearing, unless an Illinois statute or rule of evidence provides otherwise." Chicago Police Board Rules of Procedure, art. III(D) (eff. Feb. 18, 2021), https://www.chicago.gov/content/dam/city/depts/cpb/PoliceDiscipline/RulesofProcedure20210218.pdf

[https://perma.cc/6DNL-QBA9]. Finally, judicial proceedings are governed by the Illinois Rules of Evidence. Ill. R. Evid. 101 (eff. Jan. 6, 2015).

¶ 26 Where does all this lead? In short, it makes sense that the General Assembly would not put any limits on the word "evidence" in the text of Act. The reason: the proceedings to which the Act applies all use different parts of the Illinois Rules of Evidence or do not use the Illinois Rules of Evidence at all. The word "evidence" broadly allows the presiding officer in each type of proceeding—judicial, administrative, or disciplinary—to employ the word "evidence" as it is used in that specific context without creating a conflict with the Act's language. In criminal judicial proceedings, then, "evidence" must be subject to the Illinois Rules of Evidence applicable to criminal cases.

¶ 27 We also can look outside the Act to see other instances in which the General Assembly has expressly provided for exceptions to the Rules of Evidence when it means to do so. For instance, the legislature has expressly delineated hearsay exceptions in prosecutions for sexual acts against children under the age of 13 and those with intellectual, cognitive, or developmental disabilities (725 ILCS 5/115-10 (West 2016) (listed evidence "shall be admitted as an exception to the hearsay rule")) and in actions for orders of protection on behalf of high-risk adults with disabilities in certain circumstances (750 ILCS 60/213.1 (West 2016) (same)). Here, the Act contains no exceptions to any rule of evidence as demonstrated by the General Assembly's silence. *E.g.*, *Estate of Howell v. Howell*, 2015 IL App (1st) 133247, ¶ 30 (looking to evidence "that when the General Assembly wishes to dictate a certain result, it knows how to do so and it has done so expressly").

¶ 28 The State's position leads to absurd results it makes no attempt to explain. What about relevance, a threshold requirement that must be met by every item of evidence? *People v. Dabbs*, 239 Ill. 2d 277, 289 (2010). Irrelevant evidence is not admissible. Ill. R. Evid. 402 (eff. Jan. 1, 2011). Under the State's expansive reading, it could seek to admit body-worn camera footage entirely unrelated to a particular judicial proceeding. With that, counsel might improperly impeach witnesses by way of opinion or reputation evidence, so long as any out-of-court statements constituting that evidence were captured by on an officer's body-worn camera. See Ill. R. Evid. 608 (eff. Jan. 1, 2011). Officers' audible speculation could find its way into the trial record, uninhibited by the personal knowledge requirement. See Ill. R. Evid. 602 (eff. Jan. 1, 2011). Perhaps most worrisome, trial judges would find themselves powerless to exclude evidence even when the danger of unfair prejudice, confusion of the issues, or misleading the jury substantially outweighs its probative value. See Ill. R. Evid. 403 (eff. Jan. 1, 2011). We must construe the Act to avoid these absurd results. See *People v. Burchell*, 2018 IL App (5th) 170079, ¶ 8.

¶ 29 The dissent argues that our analysis runs counter to the purpose of the Act, which is to "promote trust and mutual respect." We fail to see how a trial court promotes "trust and mutual respect" by allowing irrelevant or unduly prejudicial evidence when it happens to be recorded on a police body-worn camera. Like the State, the dissent makes no attempt to explain why the rule against hearsay happens to be the only rule of evidence the Act ignores. Of course, the State may think rules of relevancy or undue prejudice fall by the wayside as well. As we have explained, however, that result would be absurd and, as even the dissent reminds us, contrary to the Act's truth seeking and trust building purposes.

¶ 30 Having concluded that the Act does not allow the admission of body-worn camera video without evidentiary limitation, we adhere to our original analysis of the statements in

Hernandez's video as hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Neither party disputes that the recording contains "statements" Hernandez made. Neither party disputes that Hernandez made the relevant statements "other than *** while testifying at the trial." See *id.* The only dispute involves admitting the statements to prove the truth of the matter they assert—that Collins "dropped a pistol right there in the middle of the lot where we started"—or whether the statements were admitted for some other purpose, namely, to chronicle the course of the police investigation.

¶ 31     Collins relies heavily on *People v. Jura*, 352 Ill. App. 3d 1080 (2004), to argue that Hernandez's statements were offered to prove the truth of the matter asserted, not to show the course of the investigation. We find *Jura* persuasive.

¶ 32     The court in *Jura* analyzed the testimony of three officers. All of them testified that they received a radio call of " 'a person with a gun' " at " '2845 West 38th Street in the alley.' " *Id.* at 1082-84. The radio call also described the suspect as a " 'male White' " and included information about height and a face tattoo. *Id.* The court's analysis began by acknowledging that officers may testify to statements made out of court where the statements are used to show the officers' investigative steps and not for the truth of the matter asserted. *Id.* at 1085. The court cautioned, however, that the statements must be " 'necessary and important' " to a full explanation of the State's case. *Id.* The court rejected the State's argument of a nonhearsay purpose because "[t]here was no issue regarding the reason why the officers proceeded to the alley behind 38th Street." *Id.* at 1086. Here, similarly, there is no issue about why officer Hernandez returned to the lot Collins ran through. Hernandez's nonhearsay testimony sufficed to explain that the officers went back to search for the gun Hernandez claimed to have seen Collins drop.

¶ 33     We conclude, as the court did in *Jura*, that the hearsay statements in Hernandez's body camera video were not "necessary and important" to explain the State's case. The State implies that the jury may have been confused because Hernandez arrested Collins and then went back "several blocks removed from where the incident eventually came to an end" to recover the gun. See *People v. Cameron*, 189 Ill. App. 3d 998, 1004 (1989) (" 'arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene' "). Here, no risk existed that the jury would believe Hernandez just "happened upon the scene" where the gun was found because Hernandez was both the arresting officer and the pursuing officer who saw Collins toss the gun.

¶ 34     After finding no nonhearsay purpose, the court in *Jura* allowed that the State's argument would have been reasonable had it not been for multiple witnesses testifying to the hearsay statements and the State emphasizing the statements in opening and closing arguments. *Jura*, 352 Ill. App. 3d at 1088-89. Here, we do not have multiple witnesses repeating the hearsay, but do have Hernandez repeating the relevant hearsay statements in some form at least three times throughout the video. And, as in *Jura*, the State not only relied on the hearsay statements during its closing argument, it replayed the video in full. Like the court in *Jura*, we cannot accept that Hernandez's statements in the body camera video were admitted for anything but the truth of the matter it asserted—namely, that the black gun was in the lot through which Collins ran and that Collins dropped it there.

¶ 35    As this court has cautioned, "[t]he 'police procedure' shibboleth has not proved persuasive" in many cases. *People v. Warlick*, 302 Ill. App. 3d 595, 600 (1998) (collecting cases). Where it is enough for an officer to explain that an event happened (observation, radio message, witness description) and he or she responded to it, the substance of an out-of-court statement memorializing that event is inadmissible. *Id.*

¶ 36    We also find that the admission of Hernandez's statements through the body camera video to be even more prejudicial than the testimony in *Jura* or many of the cases described in *Warlick*, where the officers merely testified about the radio dispatch they heard. *Jura*, 352 Ill. App. 3d at 1082-84; *Warlick*, 302 Ill. App. 3d at 600 (citing, *e.g.*, *People v. Hazen*, 104 Ill. App. 2d 398, 402-03 (1969) (error to admit account of radio message)). Rather than testimony about the video, we are dealing with the video itself. As a justice of this court explained, and we agree, "a video is a most powerful piece of evidence, *** an observation requiring no citation." *Hudson v. City of Chicago*, 378 Ill. App. 3d 373, 434 (2007) (O'Malley, J., dissenting).

¶ 37    We have reviewed the video and find that it is of the type to easily overpersuade. The video depicts a chase at night, with frenetic movements caused by the camera's attachment to Hernandez's body. Hernandez calls over the radio in an urgent tone of voice, while he is breathing deeply from the chase. The video shows at least two police SUVs had responded to the scene with searchlights. Four officers, at minimum, take Collins into custody. Because there was no nonhearsay purpose to admitting the video with Hernandez's out-of-court statements, the nature of the video turns more prejudicial than probative.

¶ 38    The State raised a second argument in its petition for rehearing based on *People v. Theis*, 2011 IL App (2d) 091080, and *People v. Griffin*, 375 Ill. App. 3d 564 (2007), contending that the audio portions of Hernandez's body camera video were admissible because they were mechanical recordings. The State did not cite these cases in its initial briefing, and the cases were decided well before briefing. More troubling still, the State's new cases raise a new theory for the admissibility of Hernandez's camera audio. We admonish the State that a petition for rehearing does not present an opportunity to raise old cases or new theories. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued *** shall not be raised *** on petition for rehearing."). But because we asked for a response from Collins and the matter is fully briefed, we will address the State's new theory.

¶ 39    Both *Theis* and *Griffin* include a broad assertion, on which the State now relies. The State contends that "[a] taped conversation is not hearsay; rather, it is a 'mechanical eavesdropper with an identity of its own, separate and apart from the voices recorded.' " *Theis*, 2011 IL App (2d) 091080, ¶ 32 (quoting *Griffin*, 375 Ill. App. 3d at 571). In *Theis*, the court rejected a criminal defendant's argument that a detective's recorded statements constituted hearsay. *Id.* Because the defendant's answers would have been "nonsensical" without the detective's statements, the court concluded they were nonhearsay statements admissible to show their effect on the listener. *Id.* ¶ 33. In *Griffin*, the court also dealt with statements of a party to a conversation with the defendant. *Griffin*, 375 Ill. App. 3d at 570-71.

¶ 40    The broad pronouncements in both *Theis* and *Griffin* are *dicta* because the relevant statements in each were admissible under an exception to the hearsay rules. *Theis*, 2011 IL App (2d) 091080, ¶ 33; see also *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 277 (2009) (defining *dicta*).

¶ 41        Aside from countering that the statements in *Theis* and *Griffin* about mechanical eavesdropping are not *dicta*, the dissent makes no attempt to reconcile *Theis* and *Griffin* with the earlier cases on which they purport to rely. *Theis* relied on *Griffin*, which in turn relied on *People v. Harvey*, 95 Ill. App. 3d 992, 1004-05 (1981) ("The recording *** is not treated as hearsay but as a mechanical eavesdropper ***."). *Harvey* pulled the "mechanical eavesdropper" rule from *Belfield v. Coop*, 8 Ill. 2d 293 (1956), but examining *Belfield*, we see its rule had nothing to do with hearsay.

¶ 42        In *Belfield*, the question presented dealt with witness competency. There, a conversation between two witnesses was critical to the case. *Id.* at 299-300. One of the parties to the conversation, however, lacked competency to testify under evidentiary rules governing the cause of action. *Id.* at 300. The incompetent witness could provide the same information to the court, however, because the admissibility of the mechanical recording of the conversation between the two witnesses was the same as if an otherwise competent witness had overheard the conversation and testified to it. *Id.* at 303. Once again and critically, the conversation would have been admitted as an exception to the hearsay rule because at least one conversation participant was a party. See *id.* at 297. The statements in *Theis* and *Griffin* on which the State relies are overly broad and do not accurately reflect the principle they purport to convey.

¶ 43        Having found error, we must determine whether it was harmless. The State, whose burden it is to establish harmless error beyond a reasonable doubt, cites no authority discussing harmless error. Instead, the State cites *People v. McNeal*, 2019 IL App (1st) 180015, ¶ 83, for the proposition that Collins's flight shows consciousness of guilt. Whatever the merits of that proposition, the State reads *McNeal* out of context. There, our discussion of flight as evidence of guilt occurred during an examination of whether the evidence was closely balanced for the purposes of the plain error rule. *Id.* When a defendant raises plain error based on forfeited arguments, it is his or her burden to show the evidence as closely balanced; here, it is the State's burden to show admitting hearsay as harmless beyond a reasonable doubt. *People v. Magallanes*, 409 Ill. App. 3d 720, 746 (2011) (explaining different standards). We do not know what the court in *McNeal* would have held had the relevant issues been preserved and been subject to harmless error review, especially because we also have held that "[w]hile flight provides some evidence of consciousness of guilt, it is far from overwhelming." *People v. Melchor*, 376 Ill. App. 3d 444, 457 (2007).

¶ 44        The only other case the State cites, *People v. Gray*, 2017 IL 120958, ¶ 36, was not a harmless error case and stands for the unremarkable proposition that testimony of a single eyewitness can suffice to prove guilt beyond a reasonable doubt. But on harmless error review, the question is not what the jury could have done, but what "the jury *would have* done." (Emphasis in original.) *People v. Parmly*, 117 Ill. 2d 386, 396 (1987). We must determine whether the erroneous admission of hearsay evidence serves as "the weight that tipped the scales against the defendant." (Internal quotation marks omitted.) *Id.* Even if the evidence is "minimally sufficient," evidentiary error constitutes reversible error if "we cannot say that retrial without this evidence would produce the same result." *People v. Manning*, 182 Ill. 2d 193, 215 (1998) (citing *Parmly*, 117 Ill. 2d at 396).

¶ 45        We do not quarrel with the idea that Hernandez's testimony was "minimally sufficient" to sustain Collins's conviction. We cannot conclude, however, that admitting the hearsay statements in the body camera video constitutes harmless beyond a reasonable doubt. Collins's theory at trial centered on the officers' "tunnel vision" about his guilt and their not finding the

gun until after Collins's arrest. In short, Collins attacked the officers' (especially Hernandez's) credibility. During the State's closing argument, not only did the prosecutor play and walk the jury through the entire video, but he told the jury the video corroborated Hernandez's credibility:

> "And what do you see when he goes back to that location? Do you see an officer who is confused about where he is? Do you see an officer looking around with his flashlight, oh, maybe it's over here, maybe it's over here, I'm not sure? No. He walks directly to where he saw that gun at. You see it on this video. *** It makes you ask a question in this situation. If Officer Hernandez didn't see the defendant drop that gun in that lot then how is he able to describe it so accurately to his partners? *** If he didn't see the defendant drop it at that location how is he able to tell his fellow officers exactly where it was dropped?"

The State's theory of the case focused on Hernandez's statements in the body camera video as essential corroboration to his testimony that he saw Collins drop the gun in the lot during the chase.

¶ 46    The State enforces its heavy reliance on the video in its brief, emphasizing that "Officer Hernandez's in-court testimony was bolstered by video footage which showed his return to *** the specific area where moments before, he had personally observed defendant discard a weapon." The State unintentionally raises the harm in admitting Hernandez's statements captured on video—they "bolstered" Hernandez's in-court testimony, making it more likely the jury would find him credible.

¶ 47    The State considers the evidence overwhelming, relying solely on Hernandez's testimony about seeing Collins toss the gun. As we already explained, Hernandez's testimony may have been "minimally sufficient" to support a conviction, but that is all it is. An evidence technician recovered the gun and found "no latent prints on the firearm, firearm magazine, nor the rounds of ammunition." Nothing else corroborated Hernandez's testimony. We acknowledge, as the State points out, that Collins introduced Sergeant Lopez's body camera video during his case-in-chief. But as we read the record, counsel used Lopez's body camera video to rebut the State's introduction of Hernandez's body camera video. The record suggests that Collins would not have introduced Lopez's body camera video had the statements in Hernandez's video been properly excluded. Indeed, during the hearing on Collins's motion for a new trial, counsel explicitly argued that she would not have introduced Lopez's body camera video had Hernandez's been excluded.

¶ 48    At the end of the day, the State relies on the uncorroborated testimony of a single witness to argue harmless error in admitting the hearsay statements in Hernandez's body camera video. We find these facts insufficient to meet the State's burden to show harmlessness beyond a reasonable doubt. By admitting the hearsay statements in Hernandez's body camera video, the trial court committed reversible error.

¶ 49                                      Remaining Arguments

¶ 50    Collins makes two more arguments. He says the prosecutor made improper statements during closing and rebuttal arguments by holding against Collins his invoking of two constitutional rights: (i) the prosecutor implied that Collins was "running away" from responsibility by exercising his right to a trial and (ii) the prosecutor commented on Collins's postarrest silence. Collins also argues that trial counsel was ineffective for failing to seek a

jury instruction allowing jurors to draw a negative inference from Hernandez's failure to immediately turn on his body camera.

¶ 51    We have found error in admitting the hearsay statements in Hernandez's body camera video and need address his remaining arguments only if we find them likely to recur on remand. See *People v. Fuller*, 205 Ill. 2d 308, 346 (2002) (addressing "only those additional contentions *** likely to be a factor on remand").

¶ 52    Without deciding the propriety of the specific arguments Collins challenges, we reiterate the impropriety of disparaging a defendant's exercise of his or her constitutional rights during closing argument. See *People v. Herrero*, 324 Ill. App. 3d 876, 887 (2001) (describing prosecutor's comment on defendant's exercise of his right to trial as "outrageous"); *People v. Herrett*, 137 Ill. 2d 195, 212-13 (1990) (describing prosecutor's comment on postarrest silence as "exceed[ing] the bounds of fair comment").

¶ 53    We also decline to address Collins's ineffectiveness claim directed at counsel's alleged failure to request a negative inference instruction based on Hernandez's delay in turning on his body camera. Because we have found the hearsay statements in the body camera video inadmissible, it is unclear whether, and to what extent, the State will use the video on remand and whether counsel's strategic decisions will depend entirely on the use (or not) of the video.

¶ 54    Finally, as we said, Hernandez's testimony without the hearsay statements in the video appears at least "minimally sufficient" to support a conviction if believed by the factfinder, so there is no double jeopardy impediment to Collins's retrial. See *People v. Taylor*, 76 Ill. 2d 289, 309-10 (1979).

¶ 55    Reversed and remanded.

¶ 56    JUSTICE COGHLAN, dissenting:

¶ 57    I respectfully dissent from the majority's modified opinion upon denial of rehearing because, as the trial judge correctly held, body camera evidence is not hearsay. Rather, such evidence is admissible in "judicial *** proceeding[s]" under the unambiguous language of the Act. 50 ILCS 706/10-30 (West 2016). The evidence is also admissible as a properly authenticated "taped conversation or recording." (Internal quotation marks omitted.) *People v. Hughes*, 2013 IL App (1st) 110237, ¶ 65.

¶ 58    "The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature." *People v. McLure*, 218 Ill. 2d 375, 381 (2006). The "best evidence of legislative intent is the language of the statute." *Id.* at 382. When possible, the court should interpret a statute according to its plain and ordinary meaning. *People v. Donoho*, 204 Ill. 2d 159, 171 (2003). We do not look beyond the plain language of a statute to ascertain legislative intent unless the statute is ambiguous, meaning that it can "reasonably be interpreted in two different ways." *People v. Holloway*, 177 Ill. 2d 1, 8 (1997). "We will not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent of the legislature." *Gaffney v. Board of Trustees of Orland Fire Protection District*, 2012 IL 110012, ¶ 56.

¶ 59    The majority looks beyond the plain, unambiguous language of the Act and creates a limitation that conflicts with the intent of the legislature. On its face, the Act unambiguously allows officer body camera recordings, including both audio and visual footage, to be admitted in a judicial proceeding without any express limitation. The Act provides that "recordings"

from officer-worn body cameras "may be used as evidence in any administrative, judicial, legislative, or disciplinary proceeding." 50 ILCS 706/10-30 (West 2016). The Act contemplates the admission of both audio and visual recordings, as it defines "officer-worn body camera" as "an electronic camera system for creating *** and processing *audiovisual* recordings that may be worn about the person of a law enforcement officer." (Emphasis added.) *Id.* § 10-10. Additionally, a "recording" is defined as the process of capturing data stored on a "recording medium," which includes the "playback of recorded *audio and video*." (Emphasis added.) *Id.*

¶ 60    Moreover, the majority's interpretation of the Act conflicts with its explicit purpose. The Act clearly provides that its purpose is to promote "trust and mutual respect between law enforcement agencies and the communities they protect" by "provid[ing] state-of-the-art evidence collection" as well as "impartial evidence and documentation to settle disputes and allegations of officer misconduct." *Id.* § 10-5. Additionally, it seeks to "help collect evidence while improving transparency and accountability, and strengthening public trust." *Id.* It would therefore vitiate the clear purpose of the Act if we parsed through this "impartial evidence and documentation" and excluded any statements made therein if they meet the definition of hearsay (especially where the Act does not provide for such a limitation under its plain language). To do so would impermissibly rewrite the statute by reading into it a limitation that "conflicts with the expressed intent of the legislature" of "improving transparency and accountability." See *Gaffney*, 2012 IL 110012, ¶ 56.

¶ 61    It is well established that "[t]he legislature has the power to prescribe new rules of evidence and alter existing ones." See, *e.g.*, 725 ILCS 5/115-10 (West 2016) (creating a hearsay exception in a prosecution for a physical or sexual act perpetrated against a child under the age of 13 and those with intellectual, cognitive, or developmental disabilities); 750 ILCS 60/213.1 (West 2016) (establishing a hearsay exception in an action for an order of protection for a high-risk adult with disabilities under certain circumstances). "A statutory rule of evidence is effective unless in conflict with a rule or a decision of the Illinois Supreme Court." Ill. R. Evid. 101 (eff. Jan. 1, 2011). "[W]here an irreconcilable conflict exists between a legislative enactment and a rule of this court on a matter within the court's authority, the rule will prevail." *People v. Peterson*, 2017 IL 120331, ¶ 31.

¶ 62    Our original opinion assumed that the Act allows for the admission of body camera recordings, subject to the hearsay rule; in effect, it implied that there is a conflict with an Illinois Supreme Court rule or decision where there is none. Our supreme court has not held that statements made in officer-worn body camera recordings are inadmissible hearsay or subject to a hearsay analysis under the Act. *Contra id.* ¶¶ 31-34 (finding that a statute providing for a hearsay exception for intentional murder of a witness was in direct conflict with Illinois Supreme Court Rule 804(b)(5) (eff. Jan. 1, 2011) and therefore "the statute must give way to the rule"). Nor is there an Illinois Supreme Court rule that irreconcilably conflicts with the Act. See, *e.g.*, *People v. Solis*, 221 Ill. App. 3d 750, 751-53 (1991) (holding that a statute that deemed written results of blood alcohol tests admissible as evidence under the business record exception did not conflict with Illinois Supreme Court rule prohibiting the admission of such records); *In re Estate of Crawford*, 2019 IL App (1st) 182703, ¶ 36 (statutory rule of evidence under the Dead Man's Act (735 ILCS 5/8-201 (West 2016)) prohibiting admission of claimant's affidavit and handwritten log of alleged loans governed and was not subject to hearsay exceptions). Absent an Illinois Supreme Court rule or decision in direct conflict with

the Act, we must, under the well-established rules of statutory construction, apply its unambiguous language. Under the clear terms of the Act, audiovisual recordings from police body cameras are admissible "as evidence in any administrative, judicial, legislative or disciplinary proceeding." 50 ILCS 706/10-30 (West 2016).

¶ 63    Even assuming *arguendo* that audio recordings are not admissible under the Act, the trial court correctly observed that this evidence is also admissible as "just a regular video of a crime scene that was occurring at that point in time." As the author of the majority opinion in this case recognized in *Hughes*, 2013 IL App (1st) 110237, ¶ 65, "[w]hen introduced by the State, a video and transcript are not considered hearsay (Ill. R. Evid. 802(d) (eff. Jan. 1, 2011)), and likened to in-court testimony."[1] The majority distinguishes *People v. Theis*, 2011 IL App (2d) 091080, and *People v. Griffin*, 375 Ill. App. 3d 564 (2007), because "the relevant statements in each were admissible under an exception to the hearsay rule." *Supra* ¶ 40. However, in both cases, this court directly relied on the rule that "a taped conversation or recording, which is otherwise competent, material and relevant is admissible so long as it is authenticated and shown to be reliable through proper foundation" in holding that the relevant statements were not hearsay. See *Griffin*, 375 Ill. App. 3d at 570-71; see also *Theis*, 2011 IL App (2d) 091080, ¶ 32. Similarly, here, the body camera evidence was properly admitted because it is not hearsay.

¶ 64    For the foregoing reasons, the properly admitted evidence introduced at trial supports the defendant's convictions beyond a reasonable doubt. I would affirm the defendant's convictions for unlawful possession of a weapon by a felon and armed habitual criminal.

---

[1]Quoting, with approval, *People v. Theis*, 2011 IL App (2d) 091080, ¶ 32, the *Hughes* majority also recognized that, " 'It is well established that a taped conversation or recording, which is otherwise competent, material and relevant, is admissible so long as it is authenticated and shown to be reliable through proper foundation. [Citation.] A taped conversation is not hearsay; rather, it is a "mechanical eavesdropper with an identity of its own, separate and apart from the voices recorded." ' [Citation.]" Hughes, 2013 IL App (1st) 110237, ¶ 65.