2020 IL App (1st) 181746
No. 1-18-1746
Opinion filed December 21, 2020

First Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 825 |
| | ) | |
| JODON COLLINS, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Joan Charles P. Burns, |
| | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Walker and Justice Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1     A jury found Jodon Collins guilty of unlawful possession of a weapon by a felon and of being an armed habitual criminal. Officers arrested Collins after a foot chase partially caught on body camera video. The trial court admitted the video over repeated objections by Collins's counsel that the audio included inadmissible hearsay statements from Chicago police officer Martin Hernandez. We agree with Collins. Officer Hernandez's statements captured on the video served no nonhearsay purpose and were inadmissible. The State's evidence almost exclusively

consisted of Hernandez's testimony, further leading us to conclude the error was not harmless beyond a reasonable doubt. We reverse and remand for a new trial.

¶ 2                                    Background

¶ 3    Chicago police officers Martin Hernandez and Joel Lopez were on patrol shortly after 1 a.m. on December 16, 2017. As they turned onto Walnut Street they saw a group of three people standing near 3300 West Walnut. The group looked in the officers' direction and started walking away from them. As the officers got closer to 3300 West Walnut Street, Hernandez got out of the car to "conduct an investigation."

¶ 4    Hernandez saw one member of the group, who he identified as Jodon Collins, "turn around, look at us and immediately start running west and then northbound." Before Collins ran, Hernandez did not observe anything illegal. Specifically, he did not see anyone in the group engage in any hand-to-had transactions, did not see Collins holding a gun, and did not see a bulge in Collins's pants. Collins ran through a vacant lot, "holding his left side," with Hernandez five-to-eight feet behind. From that distance, Hernandez saw Collins "drop a black handgun" on the ground.

¶ 5    Hernandez, after hesitating on seeing the gun, kept chase. To get to Fulton Street, Collins had to jump two fences. Hernandez also cleared the fences, but lost ground in the process. From about 40 feet away, Hernandez saw Collins jump a final fence into the yard of a house on Fulton Street. Once Collins hopped the fence, Hernandez lost sight of him. Hernandez went into the back yard and found Collins "crouched down" against the wall of the house. Hernandez arrested Collins and handed him off to other officers before going back to the vacant lot where he recovered a black handgun in the spot where he saw Collins drop it.

¶ 6    Hernandez wore a body camera. To activate his body camera, he had to twice push a button on the front of it. Once the camera activated, there was "a 15-second period that it goes back and records." Over an objection from Collins's counsel, the court allowed the State to play video footage from the camera with the audio. The video does not start until Hernandez was "towards the third fence area" because, as Hernandez explained it, when the chase began, his "focus was on the person that's fleeing." Hernandez agreed that a Chicago Police Department special order required him to start the camera at the beginning of any incident and "leave it recording till the scene is safe."

¶ 7    During the video, Hernandez made the following statements on his radio, after putting Collins in custody:

>  "Get to that lot, dude. Hurry up. He dropped it there."
>
> "Go back to the lot where he ran through, dude. It's right in the middle of the lot. It's black."
>
> "It's a pistol, squad. He dropped a pistol right there in the middle of the lot over there where it started."

Before trial, Collins's counsel had moved *in limine* to bar the video, arguing that the statements it contained were hearsay and improper prior consistent statements. The trial court denied the motion, overruled counsel's objection to the video at the time it was played, and overruled counsel's objection to the video when the court formally admitted it into evidence.

¶ 8    Chicago police evidence technician Robert Franks analyzed the gun for fingerprints but found none. The State admitted certified copies of two previous convictions for possession of a controlled substance with intent to deliver.

¶ 9    Collins did not testify, but his counsel called Sergeant Joel Lopez, who laid the foundation for the admission of his body camera video. He explained that his video starts after Hernandez had already gotten out of the car. The video shows Lopez driving for a while and then eventually getting out of his car and searching unsuccessfully for the gun. Collins's counsel played the video for the jury, without any objection by the State.

¶ 10    During closing argument, the State discussed Hernandez's body camera video, rhetorically asking the jury how Hernandez could have directed his fellow officers back to the lot where they found the gun if he had not seen Collins drop it there. The State then played the entire video for the jury. Collins's counsel played Lopez's body camera video for the jury, arguing that Hernandez's instructions to go back to the lot (audible in both officers' body camera videos) were confusing because it took Lopez so long to get to the right area.

¶ 11    The jury found Collins guilty of unlawful use of a weapon by a felon and being an armed habitual criminal. Collins filed a motion for a new trial, repeating the argument that the audio from Hernandez's body camera video was improperly admitted. The State responded that Collins's counsel had used the officers' videos for her own benefit, to which Collins's counsel replied that she had only used the videos because "the court ruled that the audio portions *** would be admissible." The trial court reiterated its view that the videos were "obviously admissible" and denied the motion for a new trial.

¶ 12    The trial court merged the unlawful use of a weapon by a felon into the armed habitual criminal count and sentenced Collins to 7½ years in the Illinois Department of Corrections.

¶ 13                                    Analysis

¶ 14    Collins argues the trial court erred in admitting the audio from Hernandez's body camera because it exposed the jury to "inadmissible hearsay." Collins takes issue with several statements Hernandez made throughout the audio, telling other officers that Collins dropped a "black pistol" as he ran from Hernandez. The State responds that Collins has waived the issue by using the body camera video to his advantage in closing arguments and by introducing Lopez's body camera video. On the merits, the State argues that Hernandez's statements were not hearsay because they were only offered to explain the officers' course of conduct, not for the truth of the matter asserted. See Ill. R. Evid. 802 (eff. Jan. 1, 2011).

¶ 15                                    Waiver Argument

¶ 16    We start by considering, and rejecting, the State's waiver argument. The State contends Collins either invited or acquiesced in the admission of Hernandez's body camera video because he later "used the 'error' " by incorporating the video into his arguments about the unreliability of Hernandez's testimony. The doctrine of invited error prevents a defendant from raising a claim on appeal where he or she "procures, invites, or acquiesces in the admission" of otherwise improperly admitted evidence. *People v. Bush*, 214 Ill. 2d 318, 332 (2005). The doctrine is grounded in "notions of fair play" (*People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)), and we apply it where a defendant " 'sit[s] by' " and deprives the State of the opportunity to cure any alleged error (see *Bush*, 214 Ill. 2d at 332-33 (quoting *People v. Trefonas*, 9 Ill. 2d 92, 98 (1956))).

¶ 17    Both cases the State relies on, *Bush* and *Villarreal*, involved a defendant whose counsel behaved far differently than Collins's counsel. In *Bush*, the defendant's counsel stipulated to admission of evidence that the substance he was accused of possessing was cocaine. *Id.* at 333.

In *Villarreal*, the defendant on appeal attempted to attack verdict forms that his own counsel submitted at trial. *Villarreal*, 198 Ill. 2d at 227. On the other hand, Collins's counsel (i) filed a motion *in limine* objecting to the admission of Hernandez's body camera video, (ii) objected at the time the video was offered as a trial exhibit, (iii) objected again when the trial court formally admitted the State's exhibits at the close of evidence, and (iv) preserved her objection in a motion for a new trial by expressly arguing that she only admitted Lopez's video in response to the admission of Hernandez's video.

¶ 18    The record demonstrates that Collins's counsel never acquiesced to the admission of Hernandez's body camera video. Instead, she used Lopez's video and her argument only to make the best of the jury viewing Hernandez's video over her objection. Collins's challenge to the admissibility of Hernandez's body camera video has not been waived.

¶ 19                                   Hearsay Issue

¶ 20    On the merits, Collins claims the video from Hernandez's body camera—the audio in particular—should not have been admitted because it exposed the jury to hearsay not falling within any exception. In the trial court, the State argued both that the statements in the body camera video were not hearsay and, in the alternative, were admissible as excited utterances. The State abandons the latter argument on appeal and asserts only that the statements in the video were not hearsay. We review the denial of Collins's motion *in limine* and the admission of the contested video evidence for an abuse of discretion. *People v. Dunmore*, 389 Ill. App. 3d 1095, 1105-06 (2009).

¶ 21    The parties focus almost entirely on the disputed hearsay character of Hernandez's body camera video. Neither party, however, starts at the beginning—the Law Enforcement Officer-

Worn Body Camera Act (Act) (50 ILCS 706/10-1 *et seq.* (West 2016)). The Act provides that "recordings may be used as evidence in any administrative, judicial, legislative, or disciplinary proceeding." *Id.* § 10-30. The Act allows the recordings to be admitted without any expressed limitation. The Illinois Rules of Evidence, in turn, prohibit the introduction of hearsay testimony "except as provided *** by statute as provided in Rule 101." Ill. R. Evid. 802 (eff. Jan. 1, 2011). So, at least theoretically, the Act's grant of the limitless use of body camera recordings would mean that there is no need for the contents of those recordings to comply with the rule against admitting hearsay.

¶ 22 But a statutory evidentiary rule governs "unless in conflict with a rule or a decision of the Illinois Supreme Court." Ill. R. Evid. 101 (eff. Jan. 6, 2015). This means that "where an irreconcilable conflict exists between a legislative enactment and a rule of this court on a matter within the court's authority, the rule will prevail." *People v. Peterson*, 2017 IL 120331, ¶ 31. Neither party has suggested that the Act provides admission of body camera recordings without limitation, and so we will assume—without deciding—that the Act allows the trial court to admit body camera recordings subject to the rules of evidence, including the hearsay rule.

¶ 23 Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Neither party disputes that the recording contains "statements" Hernandez made. Neither party disputes that Hernandez made the relevant statements "other than *** while testifying at the trial." See *id.* The only dispute involves admitting the statements to prove the truth of the matter they assert—that Collins "dropped a pistol right there in the middle of the lot

where we started"—or whether the statements were admitted for some other purpose, namely to chronicle the course of the police investigation.

¶ 24    Collins relies heavily on *People v. Jura*, 352 Ill. App. 3d 1080 (2004), to argue that Hernandez's statements were offered to prove the truth of the matter asserted, not to show the course of the investigation. We find *Jura* persuasive.

¶ 25    The court in *Jura* analyzed the testimony of three officers. All of them testified that they received a radio call of " 'a person with a gun' " at " '2845 West 38th Street in the alley.' " *Id.* at 1082-84. The radio call also described the suspect as a " 'male White' " and included information about height and a face tattoo. *Id.* The court's analysis began by acknowledging that officers may testify to statements made out of court where the statements are used to show the officers' investigative steps and not for the truth of the matter asserted. *Id.* at 1085. The court cautioned, however, that the statements must be " 'necessary and important' " to a full explanation of the State's case. *Id.* The court rejected the State's argument of a nonhearsay purpose because "[t]here was no issue regarding the reason why the officers proceeded to the alley behind 38th Street." *Id.* at 1086. Here, similarly, there is no issue about why officer Hernandez returned to the lot Collins ran through. Hernandez's nonhearsay testimony sufficed to explain that the officers went back to search for the gun Hernandez claimed to have seen Collins drop.

¶ 26    We conclude, as the court did in *Jura*, that the hearsay statements in Hernandez's body camera video were not "necessary and important" to explain the State's case. The State implies that the jury may have been confused because Hernandez arrested Collins and then went back "several blocks removed from where the incident eventually came to an end" to recover the gun.

See *People v. Cameron*, 189 Ill. App. 3d 998, 1004 (1989) (" 'arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene' "). Here, there was no risk of the jury believing that Hernandez just "happened upon the scene" where the gun was found because Hernandez was both the arresting officer and the pursuing officer who saw Collins toss the gun.

¶ 27     After finding no nonhearsay purpose, the court in *Jura* allowed that the State's argument would have been reasonable had it not been for multiple witnesses testifying to the hearsay statements and the State emphasizing the statements in opening and closing arguments. *Jura*, 352 Ill. App. 3d at 1088-89. Here, we do not have multiple witnesses repeating the hearsay, but do have Hernandez repeating the relevant hearsay statements in some form at least three times throughout the video. And, as in *Jura*, the State not only relied on the hearsay statements during its closing argument, it replayed the video in full. Like the court in *Jura*, we cannot accept that Hernandez's statements in the body camera video were admitted for anything but the truth of the matter it asserted—namely, that the black gun was in the lot through which Collins ran and that Collins was the one who dropped it there.

¶ 28     As this court has cautioned, "[t]he 'police procedure' shibboleth has not proved persuasive" in many cases. *People v. Warlick*, 302 Ill. App. 3d 595, 600 (1998) (collecting cases). Where it is enough for an officer to explain that an event happened (observation, radio message, witness description) and he or she responded to it, the substance of an out-of-court statement memorializing that event is inadmissible. *Id.*

¶ 29     We also find that the admission of Hernandez's statements through the body camera video was even more prejudicial than the testimony in *Jura* or many of the cases described in

*Warlick*, where the officers merely testified about the radio dispatch they heard. *Jura*, 352 Ill. App. 3d at 1082-84; *Warlick*, 302 Ill. App. 3d at 600 (citing, *e.g.*, *People v. Hazen*, 104 Ill. App. 2d 398, 402-03 (1969) (error to admit account of radio message)). Rather than testimony about the video, we are dealing with the video itself. As a justice of this court explained, and we agree, "a video is a most powerful piece of evidence, *** an observation requiring no citation." *Hudson v. City of Chicago*, 378 Ill. App. 3d 373, 434 (2007) (O'Malley, J., dissenting).

¶ 30    We have reviewed the video and find that it is of the type to easily overpersuade. The video depicts a chase at night, with frenetic movements caused by the camera's attachment to Hernandez's body. Hernandez calls over the radio in an urgent tone of voice, while he is breathing deeply from the chase. The video shows at least two police SUVs had responded to the scene with searchlights. Four officers, at minimum, take Collins into custody. Because there was no nonhearsay purpose to admitting the video with Hernandez's out-of-court statements, the nature of the video was more prejudicial than probative.

¶ 31    Having found error, we must determine whether it was harmless. The State, whose burden it is to establish harmless error beyond a reasonable doubt, cites no authority discussing harmless error. Instead, the State cites *People v. McNeal*, 2019 IL App (1st) 180015, ¶ 83, for the proposition that Collins's flight was evidence of consciousness of guilt. Whatever the merits of that proposition, the State reads *McNeal* out of context. There, our discussion of flight as evidence of guilt occurred during an examination of whether the evidence was closely balanced for the purposes of the plain error rule. *Id.* When a defendant raises plain error based on forfeited arguments, it is his or her burden to show the evidence as closely balanced; here, it is the State's burden to show admitting hearsay as harmless beyond a reasonable doubt. *People v. Magallanes*,

409 Ill. App. 3d 720, 746 (2011) (explaining different standards). We do not know what the court in *McNeal* would have held had the relevant issues been preserved and been subject to harmless error review, especially because we also have held that "[w]hile flight provides some evidence of consciousness of guilt, it is far from overwhelming" (*People v. Melchor*, 376 Ill. App. 3d 444, 457 (2007)).

¶ 32    The only other case the State cites, *People v. Gray*, 2017 IL 120958, was not a harmless error case and stands for the unremarkable proposition that testimony of a single eyewitness can suffice to prove guilt beyond a reasonable doubt. *Id.* ¶ 36. But on harmless error review, the question is not what the jury could have done, but what "the jury *would have* done." (Emphasis in original.) *People v. Parmly*, 117 Ill. 2d 386, 396 (1987). We must determine whether the erroneous admission of hearsay evidence was "the weight that tipped the scales against the defendant." (Internal quotation marks omitted.) *Id.* Even if the evidence is "minimally sufficient," evidentiary error constitutes reversible error if "we cannot say that retrial without this evidence would produce the same result." *People v. Manning*, 182 Ill. 2d 193, 215 (1998) (citing *Parmly*, 117 Ill. 2d at 396).

¶ 33    We do not quarrel with the idea that Hernandez's testimony was "minimally sufficient" to sustain Collins's conviction. We cannot conclude, however, that admitting the hearsay statements in the body camera video was harmless beyond a reasonable doubt. Collins's theory at trial centered on the officers' "tunnel vision" about his guilt and their not finding the gun until after Collins's arrest. In short, Collins attacked the officers' (especially Hernandez's) credibility. During the State's closing argument, not only did the prosecutor play and walk the jury through

the entire video, but he told the jury that Hernandez was credible *because* the video corroborated his story:

> "And what do you see when he goes back to that location? Do you see an officer who is confused about where he is? Do you see an officer looking around with his flashlight, oh, maybe it's over here, maybe it's over here, I'm not sure? No. He walks directly to where he saw that gun at. You see it on this video. *** It makes you ask a question in this situation. If Officer Hernandez didn't see the defendant drop that gun in that lot then how is he able to describe it so accurately to his partners? *** If he didn't see the defendant drop it at that location how is he able to tell his fellow officers exactly where it was dropped?"

The State's theory of the case focused on Hernandez's statements in the body camera video as essential corroboration to his testimony that he saw Collins drop the gun in the lot during the chase.

¶ 34 The State enforces its heavy reliance on the video in its brief before us, emphasizing that "Officer Hernandez's in-court testimony was bolstered by video footage which showed his return to *** the specific area where moments before, he had personally observed defendant discard a weapon." The State unintentionally raises the harm in admitting Hernandez's statements captured on video—they "bolstered" Hernandez's in-court testimony, making it more likely the jury would find him credible.

¶ 35 The State considers the evidence overwhelming, relying solely on Hernandez's testimony about seeing Collins toss the gun. As we already explained, Hernandez's testimony may have been "minimally sufficient" to support a conviction, but that is all it is. An evidence technician

recovered the gun and found "no latent prints on the firearm, firearm magazine, nor the rounds of ammunition." Nothing else corroborated Hernandez's testimony. We acknowledge, as the State points out, that Collins introduced Sergeant Lopez's body camera video during his case-in-chief. But as we read the record, counsel used Lopez's body camera video to rebut the State's introduction of Hernandez's body camera video. The record suggests Collins would not have introduced Lopez's body camera video had the statements in Hernandez's video been properly excluded. Indeed, during the hearing on Collins's motion for a new trial, counsel explicitly argued that she would not have introduced Lopez's body camera video had Hernandez's been excluded.

¶ 36   At the end of the day, the State relies on the uncorroborated testimony of a single witness to argue harmless error in admitting the hearsay statements in Hernandez's body camera video. We find these facts insufficient to meet the State's burden to show harmlessness beyond a reasonable doubt. By admitting the hearsay statements in Hernandez's body camera video, the trial court committed reversible error.

¶ 37                              Remaining Arguments

¶ 38   Collins makes two more arguments. He says the prosecutor made improper statements during closing and rebuttal arguments by holding against Collins his invoking of two constitutional rights. The prosecutor, contends Collins, implied that Collins was "running away" from responsibility by exercising his right to a trial and commented on Collins's post-arrest silence. Collins also argues trial counsel was ineffective for failing to seek a jury instruction allowing jurors to draw a negative inference from Hernandez's failure to immediately turn on his body camera.

¶ 39    We have found error in admitting the hearsay statements in Hernandez's body camera video and need address his remaining arguments only if we find them likely to recur on remand. See *People v. Fuller*, 205 Ill. 2d 308, 346 (2002) (addressing "only those additional contentions *** likely to be a factor on remand").

¶ 40    Without deciding the propriety of the specific arguments Collins challenges, we reiterate the impropriety of disparaging a defendant's exercise of his or her constitutional rights during closing argument. See *People v. Herrero*, 324 Ill. App. 3d 876, 887 (2001) (describing prosecutor's comment on defendant's exercise of his right to trial as "outrageous"); *People v. Herrett*, 137 Ill. 2d 195, 212-13 (1990) (describing prosecutor's comment on post-arrest silence as "exceed[ing] the bounds of fair comment").

¶ 41    We also decline to address Collins's ineffectiveness claim directed at counsel's alleged failure to request a negative inference instruction based on Hernandez's delay in turning on his body camera. Because we have found the hearsay statements in the body camera video inadmissible, it is unclear whether and to what extent the State will use the video on remand, and whether counsel's strategic decisions will depend entirely on the use (or not) of the video.

¶ 42    Finally, as we said, Hernandez's testimony without the hearsay statements in the video was at least "minimally sufficient" to support a conviction if believed by the factfinder, so there is no double jeopardy impediment to Collins's retrial. See *People v. Taylor*, 76 Ill. 2d 289, 309-10 (1979).

¶ 43    Reversed and remanded.

---

**No. 1-18-1746**

---

| | |
|---|---|
| **Cite as:** | *People v. Collins*, 2020 IL App (1st) 181746 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CR-825; the Hon. Charles P. Burns, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Samuel B. Steinberg, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, Joseph Alexander, and Mikah Soliunas, Assistant State's Attorneys, of counsel), for the People. |

---